# IN THE SUPREME COURT OF IOWA

No. 09–0888

Filed December 23, 2010

**STATE OF IOWA,**

Appellee,

vs.

**COLBY ALAN PALMER,**

Appellant.

---

Appeal from the Iowa District Court for Webster County, Kurt John Stoebe, Judge.

Defendant appeals his convictions on the grounds the district court should have suppressed his incriminating statements and that his trial counsel provided ineffective assistance. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Patricia A. Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Ricki L. Osborn, County Attorney, and Timothy N. Schott, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

In this appeal, the defendant claims the district court erred in failing to grant his motion to suppress the incriminating statements he made in a second interview with the authorities. He also claims his trial counsel was ineffective. We hold the district court was correct in overruling the defendant's motion to suppress because the State scrupulously honored the invocation of his right to remain silent under the Fifth Amendment to the United States Constitution at the first interview and the defendant knowingly, intelligently, and voluntarily waived his right to remain silent prior to the initiation of the second interview. We also find defendant's trial counsel did not provide ineffective assistance by failing to object to an internally inconsistent marshalling instruction. Therefore, we affirm the judgment of the district court.

## I.  Background Facts and Proceedings.

On August 7, 2007, Colby Alan Palmer was an inmate under the custody and control of the department of corrections and incarcerated at the Fort Dodge Correctional Facility. At approximately 9:05 a.m., correctional officers Richard Sorensen and Matthew Kent transported Palmer from his cell to a recreation pen for an hour of recreation and exercise time. The transfer occurred without incident.

Approximately an hour later, Sorensen and Kent returned to the recreation pen to remove Palmer and transport him back to his cell. While preparing to transport Palmer, Palmer kicked Sorensen directly on the front of the left knee with the back of his left foot. Palmer then looked over his shoulder and said, "There's your f****** Iowa City trip."

After the kick, Kent quickly shut the recreation-pen door, locking Palmer back inside the recreation pen. Sorensen then fell against the

exit door. Kent assisted Sorensen back inside the control room, placed him in a wheel chair, and transported him to health services. The kick caused Sorensen to hyperextend his knee. As a result of the kick, Sorensen received medical treatment and missed approximately one week of work.

Eventually, officers removed Palmer from the recreation pen and transferred him back to his cell. Shortly thereafter, on the same day, correctional captain and investigator Kelly Holder approached Palmer at his cell in an attempt to interview him about the assault. Holder read Palmer the *Miranda* warning while Palmer read along from a written *Miranda* waiver form. Palmer, orally and in writing, acknowledged he understood his rights. Next, Holder asked Palmer if he wished to waive his rights and talk to her. Palmer stated that he wanted to talk about his property, not the assault, and refused to waive his rights or sign the waiver form. Holder terminated the interview.

The next day, Palmer told a correctional officer that he wanted to talk to someone about his property and "about the stuff that was going on." Palmer claims he never asked to speak to anyone about the assault that occurred the day before. Palmer's request was relayed to Holder, who then met with Palmer for a second time in a no-contact room where the prisoner and visitor are separated by a pane of glass. Holder only knew Palmer wanted to talk to her; she did not know what topics he wanted to discuss.

Before initiating the interview, Holder again read Palmer the *Miranda* warning while Palmer read along from a written *Miranda* waiver form. Palmer, orally and in writing, again acknowledged that he understood his rights. Holder then asked Palmer whether he wished to speak with her. Palmer said yes and signed the waiver form, indicating

he agreed to waive his rights and speak with Holder. Palmer understood that when he signed the waiver form, Holder was going to talk to him about the assault. He also understood Holder was recording the interview and the authorities could use anything he said during the interview in a future proceeding. With these understandings, Palmer agreed to the second interview.

During the interview, Palmer complained about how he received his property and food. Later in the interview, they discussed how things were going, why he was upset, and why he kicked Sorensen. Palmer explained he was mad at the officers in general due to a medical situation, he snapped, and Sorensen just happened to be there.

The State charged Palmer with: (1) interference with the official acts of a correctional officer, inflicting or attempting to inflict bodily injury in violation of Iowa Code section 719.1(2) (2007), a class "D" felony; and (2) assault on a correctional officer, causing bodily injury in violation of Iowa Code section 708.3A(3), an aggravated misdemeanor. Palmer pled not guilty to the charges.

Palmer filed a motion to suppress the incriminating statements he made to Holder in the second interview. Palmer argued Holder violated his constitutional rights by failing to honor his request to remain silent and interviewing him for a second time after he had previously stated he did not want to make any statements. Thus, Palmer claimed, he did not knowingly, intelligently, and voluntarily waive his right to remain silent and his statements to Holder were involuntary.

During the suppression hearing, Palmer admitted to his prior experiences with the criminal justice system. The record established that Palmer was first arrested shortly after he turned eighteen, is

experienced with the criminal justice system, and can remember being read the *Miranda* warning on at least three separate prior occasions.

The district court denied Palmer's motion to suppress the incriminating statements he had made to Holder. The case proceeded to trial, and the jury returned a verdict finding Palmer guilty of both interference with an official act of a correctional officer, inflicting or attempting to inflict bodily injury and assault on a correctional officer, causing bodily injury. After the district court entered its judgment and sentence, Palmer filed his notice of appeal.

**II. Issues.**

This case presents two issues: (1) whether the district court erred by refusing to suppress Palmer's statements to an investigating correctional officer regarding an alleged assault, and (2) whether Palmer's trial counsel was ineffective for failing to object to an internally inconsistent marshalling instruction.

**III. Suppression of Statements Palmer Made to the Correctional Officer.**

**A. Scope of Review.** We review a district court's refusal to suppress statements allegedly made in violation of constitutional guarantees de novo. *State v. Ortiz*, 766 N.W.2d 244, 249 (Iowa 2009); *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001). Under this standard of review, we make " 'an independent evaluation of the totality of the circumstances as shown by the entire record.' " *Turner*, 630 N.W.2d at 606 (quoting *State v. Howard*, 509 N.W.2d 764, 767 (Iowa 1993)). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Id.* We consider both the evidence introduced at the

suppression hearing as well as the evidence introduced at trial. *State v. Countryman*, 572 N.W.2d 553, 557 (Iowa 1997).

**B. General Constitutional Principles.** Palmer argues his incriminating statements were not voluntary and were obtained in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. In the district court and on appeal, Palmer's counsel failed to raise the admissibility of the statements under the Iowa Constitution. *See State v. Effler*, 769 N.W.2d 880, 894–95 (Iowa 2009) (Appel, J., specially concurring) (discussing why counsel should raise and brief an independent analysis of a constitutional issue under the Iowa Constitution). Consequently, we will limit our analysis regarding the admissibility of the statements to the Federal Constitution.

The Supreme Court requires the authorities to advise suspects of their *Miranda* rights under the United States Constitution before beginning a custodial interrogation. *Ortiz*, 766 N.W.2d at 250–51. The *Miranda* warnings protect a suspect's privilege against self-incrimination embodied in the Fifth Amendment by informing the suspect of his or her right to remain silent and right to the presence of counsel during questioning. *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694, 706–07 (1966). These safeguards are more than a "mere procedural nicety or legal technicality." *Ortiz*, 766 N.W.2d at 251.

Any statements made by a suspect in response to a custodial interrogation are inadmissible unless there has been an adequate recitation of the *Miranda* warning and a valid waiver by the suspect of his or her rights. *Id.*; *State v. Harris*, 741 N.W.2d 1, 5 (Iowa 2007). A suspect can waive his or her *Miranda* rights as long as the suspect has

done so knowingly, intelligently, and voluntarily. *Ortiz*, 766 N.W.2d at 251.

The State must prove two facts to establish a suspect has waived his or her *Miranda* rights knowingly, intelligently, and voluntarily. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1140–41, 89 L. Ed. 2d 410, 421 (1986). First, for a suspect to knowingly and intelligently waive his *Miranda* rights, the State must prove by a preponderance of the evidence that the waiver was made " 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " *Ortiz*, 766 N.W.2d at 251 (quoting *Moran*, 475 U.S. at 421, 106 S. Ct. at 1141, 89 L. Ed. 2d at 421). Second, for a waiver to be made voluntarily, the State must prove by a preponderance of the evidence that the relinquishment of the right was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421, 106 S. Ct. at 1141, 89 L. Ed. 2d at 421. To make these determinations, a court must inquire into the totality of the circumstances surrounding the interrogation. *Ortiz*, 766 N.W.2d at 251.

*Miranda* also provides a second level of procedural safeguards law enforcement must follow after a suspect invokes his or her Fifth Amendment privilege against self-incrimination by asserting either the right to remain silent or the right to the presence of counsel. *See, e.g.,* Christopher S. Thrutchley, Note and Comment, Minnick v. Mississippi*: Rationale of Right to Counsel Ruling Necessitates Reversal of* Michigan v. Mosley*'s Right to Silence Ruling*, 27 Tulsa L.J. 181, 183 (1991) (recognizing *Miranda* imposes two levels of procedural protections). The Supreme Court has employed different procedural safeguards depending on whether the suspect has invoked the right to remain silent or the

right to the presence of counsel. *Compare Michigan v. Mosley*, 423 U.S. 96, 103–04, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313, 321 (1975) (defining the procedure police must follow upon a suspect's invocation of the right to remain silent)*, with Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1884–85, 68 L. Ed. 2d 378, 386 (1981) (defining the procedure police must follow upon a suspect's invocation of the right to counsel).[1]

**C. Differing Procedural Safeguards Upon Invocation of the Right to Remain Silent and the Right to Counsel.**

1. *Procedural safeguards after a suspect invokes his or her right to remain silent.* In *Michigan v. Mosley*, Mosley was arrested based on an informant's tip linking him to a recent string of robberies. *Mosley*, 423 U.S. at 97, 96 S. Ct. at 323, 46 L. Ed. 2d at 317. The police took Mosley to the fourth floor of the police department, read him the *Miranda* warning, and interrogated him. *Id.* When the questioning began, Mosley stated he did not want to answer any questions about the robberies and the interrogation immediately ceased. *Id.* Mosley was then transferred to a cell on the ninth floor of the building. *Id.* At no point did he indicate a desire to consult with an attorney. *Id.* More than two hours later, a detective brought Mosley to the fifth floor, again advised him of his

---

[1]Although some scholars have criticized the differing levels of protection a suspect is provided based upon whether he or she invokes the right to remain silent or the right to counsel, a majority of the Supreme Court has not retreated from this distinction. *See, e.g.*, *Minnick v. Mississippi*, 498 U.S. 146, 164, 111 S. Ct. 486, 497, 112 L. Ed. 2d 489, 505 (1990) (Scalia, J., dissenting) (finding the distinction between the procedural safeguards triggered by invoking the right to remain silent and the right to counsel is illogical); Christopher S. Thrutchley, Note and Comment, Minnick v. Mississippi*: Rationale of Right to Counsel Ruling Necessitates Reversal of* Michigan v. Mosley*'s Right to Silence Ruling*, 27 Tulsa L.J. 181, 201 (1991) (arguing either *Mosley* or *Edwards* was wrongly decided because the same standard of procedural protection should be applied to both the right to counsel and the right to silence). Thus, we will base the level of procedural protection to which Palmer is entitled upon which of the two *Miranda* rights he invoked. Because Palmer only raised this issue under the Federal Constitution, we will not discuss the difference, if any, in the procedural safeguards under the Iowa Constitution.

*Miranda* rights, and began to question him about an unrelated fatal shooting. *Id.* at 97–98, 96 S. Ct. at 323–24, 46 L. Ed. 2d at 318. At first, Mosley denied any involvement in the shooting but eventually made an incriminating statement implicating himself in the homicide. *Id.* at 98, 96 S. Ct. at 324, 46 L. Ed. 2d at 318. At no point during this second interrogation did Mosley ask to consult with a lawyer or indicate that he did not want to talk about the homicide. *Id.* The Supreme Court granted a writ of certiorari to consider whether, consistent with *Miranda*, the police could resume questioning Mosley after he had asserted his right to remain silent. *Id.* at 100, 96 S. Ct. at 325, 46 L. Ed. 2d at 319.

The Supreme Court recognized the *Miranda* opinion stated the interrogation must cease when the suspect invokes his right to remain silent, but did not state under what circumstances, if any, a resumption of questioning was permissible. *Id.* at 101, 96 S. Ct. at 325, 46 L. Ed. 2d at 320; *see also Miranda*, 384 U.S. at 473–74, 86 S. Ct. at 1627, 16 L. Ed. 2d at 723 ("If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."). The Court reasoned the right to remain silent protects a suspect's right to cut off questioning and thereby control the time at which questioning occurs, the subjects discussed, and the length of the interrogation. *Mosley*, 423 U.S. at 103–04, 96 S. Ct. at 326, 46 L. Ed. 2d at 321. Thus, the Court concluded a resumption of questioning after a suspect has invoked his or her right to remain silent was permissible only when the suspect's right to cut off questioning was scrupulously honored. *Id.* at 104, 96 S. Ct. at 326, 46 L. Ed. 2d at 321.

To determine whether Mosley's right to cut off questioning had been scrupulously honored, the Court examined the totality of the circumstances. *Id.* at 104, 96 S. Ct. at 326–27, 46 L. Ed. 2d at 321–22.

Although the Court did not identify any controlling factors in its analysis, in holding Mosley's right to cut off questioning had been scrupulously honored, the court relied on the following facts in reaching its decision: (1) the police immediately ceased the interrogation upon Mosley's invocation of his right to remain silent, (2) the police resumed questioning only after the passage of a significant period of time, (3) before resuming questioning, the police provided Mosley with a fresh set of *Miranda* warnings, and (4) a new police officer, in another location, restricted the second interrogation to a crime that had not been a subject of the earlier interrogation. *Id.* at 104–06, 96 S. Ct. at 326–27, 46 L. Ed. 2d at 321–22.

Accordingly, under a federal constitutional analysis when a suspect asks us to determine whether an interrogator scrupulously honored the suspect's invocation of his or her right to remain silent, we must examine the totality of the circumstances by applying the *Mosley* factors. *See State v. Kasel*, 488 N.W.2d 706, 709 (Iowa 1992) (recognizing *Mosley* as the appropriate analysis under the Federal Constitution when a suspect invokes his or her right to silence and later talks to the authorities); *State v. Snethen*, 245 N.W.2d 308, 314 (Iowa 1976) (same).[2]

---

[2]In *State v. Washburne*, 574 N.W.2d 261, 267 (Iowa 1997), this court was asked to determine if a suspect's invocation of his right to remain silent was honored. There, the court determined the investigating officer honored the suspect's right to remain silent. *Washburne*, 574 N.W.2d at 267. In reaching this conclusion, the court cited *State v. Newsom*, 414 N.W.2d 354, 357 (Iowa 1987), as the sole authority for its conclusion. *Id. Newsom* was an invocation of the right-to-counsel case, rather than an invocation of the right-to-remain-silent case. *Newsom*, 414 N.W.2d at 357–58. Consequently, we overrule *Washburne* to the extent that it could be read to implicate a right-to-counsel analysis when a suspect only invokes his or her right to remain silent under the Federal Constitution.

2. *Procedural safeguards after a suspect invokes his or her right to counsel.* In *Edwards v. Arizona*, Edwards was arrested in connection with charges for robbery, burglary, and first-degree murder. *Edwards*, 451 U.S. at 478, 101 S. Ct. at 1881–82, 68 L. Ed. 2d at 382. At the police station, the authorities read him the *Miranda* warning and he agreed to submit to questioning. *Id.* at 478, 101 S. Ct. at 1882, 68 L. Ed. 2d at 382. After being told another suspect had implicated him in the crimes, he gave a taped statement presenting an alibi defense. *Id.* at 478–79, 101 S. Ct. at 1882, 68 L. Ed. 2d at 382. Edwards then agreed to make a deal with the police but stated, "I want an attorney before making a deal." *Id.* at 479, 101 S. Ct. at 1882, 68 L. Ed. 2d at 382. At this point, the interrogation ceased and Edwards was taken to the county jail. *Id.* The next morning, two detectives came to the jail to interrogate Edwards. *Id.* Edwards stated he did not want to talk to anyone but was still forced to meet with the detectives. *Id.* at 479, 101 S. Ct. at 1882, 68 L. Ed. 2d at 382–83. The detectives read Edwards the *Miranda* warning again. *Id.* at 479, 101 S. Ct. at 1882, 68 L. Ed. 2d at 383. Edwards told the detectives he was willing to talk, but first he wanted to listen to the tape recording of the other suspect who had implicated him in the crimes. *Id.* After listening to the tape, Edwards agreed to make a non-tape-recorded statement. *Id.* Thereafter, he implicated himself in the crimes. *Id.* The Supreme Court granted a writ of certiorari to consider whether, consistent with *Miranda*, the police could resume questioning a suspect after he had asserted his right to the presence of counsel. *Id.* at 478, 101 S. Ct. at 1881, 68 L. Ed. 2d at 382.

The Supreme Court recognized the *Miranda* opinion stated that once a suspect states he or she wants an attorney, " 'the interrogation must cease until an attorney is present.' " *Id.* at 485, 101 S. Ct. at 1885,

68 L. Ed. 2d at 386 (quoting *Miranda*, 384 U.S. at 474, 86 S. Ct. at 1628, 16 L. Ed. 2d at 723). The Court also noted it had previously recognized the *Miranda* opinion distinguished between the procedural safeguards triggered by the invocation of the right to remain silent and the right to counsel. *Id.* (citing *Mosley*, 423 U.S. at 104 n.10, 96 S. Ct. at 326 n.10, 46 L. Ed. 2d at 321 n.10). Thus, the Court held that

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484–85, 101 S. Ct. at 1884–85, 68 L. Ed. 2d at 386. Accordingly, the Court in *Edwards* adopted a per se ban on any further questioning of a suspect without the presence of counsel, for an indefinite duration, after the suspect invokes the right to counsel.

In *Maryland v. Shatzer*, the Supreme Court modified the *Edwards* rule. *Maryland v. Shatzer*, ___ U.S. ___, ___, 130 S. Ct. 1213, 1227, ___ L. Ed. 3d ___, ___ (2010). There, the Court decided the *Edwards* per se ban does not apply if a break in police custody lasting fourteen days has occurred. *Id.* In reaching this conclusion, the Court stated the fourteen-day period "provides plenty of time for the suspect to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody." *Id.* at ___, 130 S. Ct. at 1223, ___ L. Ed. 3d at ___.

3. *Summary of differing procedural safeguards based upon whether a suspect invokes his or her right to remain silent or the right to counsel.*

Under the Federal Constitution, the authorities must follow different procedural safeguards to re-interrogate a suspect depending on whether the suspect has invoked his or her right to remain silent or the right to the presence of counsel. When a suspect invokes the right to remain silent, the authorities must scrupulously honor the suspect's right to cut off questioning. *Mosley*, 423 U.S. at 104, 96 S. Ct. at 326, 46 L. Ed. 2d at 321. To determine if the authorities can re-interrogate a suspect after he or she has invoked the right to remain silent, a court must examine the totality of the circumstances by applying the *Mosley* factors to decide if the interrogator scrupulously honored the suspect's invocation of his or her right to remain silent. *Id.* at 104–06, 96 S. Ct. at 326–27, 46 L. Ed. 2d at 321–22. On the other hand, if the suspect invokes the right to counsel, the authorities are barred from reinitiating the interrogation without the presence of counsel, unless a break in police custody lasting fourteen days or more has occurred. *Shatzer*, ___ U.S. at ___, 130 S. Ct. at 1227, ___ L. Ed. 3d at ___; *Edwards*, 451 U.S. at 484–85, 101 S. Ct. at 1884–85, 68 L. Ed. 2d at 386.

**D. Analysis.** To determine whether the State elicited incriminating statements from Palmer in violation of his Fifth Amendment right to remain silent, this court must apply the procedural safeguards established in *Mosley*.[3] Accordingly, whether Holder elicited Palmer's incriminating statements in violation of his Fifth Amendment right to remain silent rests on whether Holder scrupulously honored Palmer's right to cut off questioning. *Mosley*, 423 U.S. at 104, 96 S. Ct. at 326, 46 L. Ed. 2d at 321.

---

[3]Palmer does not claim, nor do the facts support, that Palmer ever invoked his right to the presence of counsel. Consequently, the more stringent procedural safeguards under the Federal Constitution embodied by *Edwards* do not apply to this case.

After the alleged kick, officers removed Palmer from the recreation pen and transferred him back to his cell. Shortly thereafter, Holder approached Palmer at his cell to interrogate him about the incident. Holder read Palmer the *Miranda* warning, and Palmer orally and in writing acknowledged that he understood his rights. Palmer then refused to waive his rights or sign the waiver form, and the interrogation promptly terminated.

Holder did not approach Palmer until the next day. The next day, Palmer asked to speak to someone about a number of issues. Subsequently, Palmer met with Holder in a no-contact room. Before initiating the second interview, Holder read Palmer the *Miranda* warning. Palmer orally and in writing acknowledged that he understood his rights. Palmer also agreed to waive his rights, sign the waiver form, and speak with Holder. He understood the waiver applied to questions regarding the assault on Sorensen. During the course of the second interview, Palmer made incriminating statements concerning the alleged assault that had occurred the day before.

Under the totality of the circumstances, we find Holder scrupulously honored Palmer's initial request to remain silent. Holder immediately ceased her initial interrogation upon Palmer's invocation of his right to remain silent. Holder did not attempt to reinterview Palmer until the next day. A significant period of time had passed between the first interview and the second interview. Before resuming questioning, Holder provided Palmer with a fresh set of *Miranda* warnings, which he acknowledged he understood. The second interrogation took place in a new location.

Palmer's only argument that Holder did not scrupulously honor his right to remain silent is based upon the fact that the second interview

was conducted by the same person and was about the same incident. However, this factor is not determinative as to whether Holder scrupulously honored Palmer's right to remain silent. It is only one of the factors to consider under the totality of the circumstances.

The Court in *Mosley* clearly decided the invocation of the right to remain silent did not "create a per se proscription of indefinite duration upon any further questioning *by any police officer on any subject,* once the person in custody has indicated a desire to remain silent." *Mosley,* 423 U.S. at 102–03, 96 S. Ct. at 326, 46 L. Ed. 2d at 320–21 (emphasis added). If we were to hold the subsequent questioning by the same officer about the same crime is the determinative factor, we would be creating "a per se proscription of indefinite duration upon any further questioning *by any police officer on any subject.*" *Id.* (emphasis added). Such a holding would be contrary to *Mosley.*

The second interview by the same officer about the same crime occurred at Palmer's request. The second interview was not a product of repeated police efforts to wear down Palmer's resistance to talk about the incident or to induce him to abandon his earlier invocation of his right to remain silent. The mere fact the second interview was by the same officer concerning the same crime does not overcome the other circumstances that lead us to find Holder scrupulously honored Palmer's right to remain silent after Palmer invoked his right to remain silent during the first interview. Therefore, we hold, under the totality of the circumstances, there is no showing that Holder did not scrupulously honor Palmer's right to remain silent after Palmer invoked his right to remain silent during the first interview.

Palmer also argues we should find he did not knowingly, intelligently, and voluntarily waive his right to remain silent prior to the initiation of the second interview. We disagree.

First, it is clear Palmer was aware of the nature of his right to remain silent and the consequences of abandoning it. He acknowledged this orally and in writing prior to the initiation of the second interview. Moreover, at the suppression hearing Palmer admitted he was aware he waived his rights by signing the waiver form on August 8. Thus, we find Palmer knowingly and intelligently waived his right to remain silent.

Second, there is no evidence in the record to support the fact that Palmer was intimidated, coerced, or deceived into waiving his right to remain silent. To the contrary, it appears Palmer's waiver was the product of a free and deliberate choice. At the suppression hearing, Palmer admitted he was experienced with the criminal justice system, could remember being read the *Miranda* warning on at least three prior occasions, and was aware he waived his rights prior to the initiation of the second interview. Moreover, from the invocation of his right to remain silent on the previous day, it is evident Palmer understood how to invoke his rights. There is no evidence Holder physically abused Palmer, denied him food or sleep, or used deceit or improper promises to elicit his incriminating statements. There is also no evidence Palmer suffers from any mental weaknesses. Thus, we also find Palmer voluntarily waived his right to remain silent.

Accordingly, the district court properly denied Palmer's motion to suppress the incriminating statements he made to Holder during the second interview.

**IV.  Ineffective-Assistance-of-Counsel Claim.**

**A.  Scope of Review.**  Ineffective-assistance-of-counsel claims are the exception to the general rule requiring a party to preserve error in the district court.  *State v. Doggett,* 687 N.W.2d 97, 100 (Iowa 2004).  Normally, we preserve these claims for postconviction relief actions.  *Id.*  However, if the record is adequate, we will consider the merits of an ineffective-assistance-of-counsel claim on direct appeal.  *Id.*  We believe under this record we can decide Palmer's ineffective-assistance-of-counsel claim.

**B.  Ineffective-Assistance-of-Counsel Standard.**  To succeed on an ineffective-assistance-of-counsel claim, Palmer must prove:  (1) his counsel failed to perform an essential duty and (2) prejudice resulted from such failure.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984).  To prove his trial counsel failed to perform an essential duty, Palmer must prove his counsel's performance was deficient, meaning trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  We measure trial counsel's performance objectively by determining whether counsel's assistance was reasonable, under prevailing professional norms, considering all the circumstances.  *Id.* at 688, 104 S. Ct. at 2064–65, 80 L. Ed. 2d at 693–94; *State v. Vance,* 790 N.W.2d 775, 785 (Iowa 2010).

To establish prejudice, Palmer must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.  To establish a reasonable probability that the result would have been different, Palmer "need only show that the probability of a different result is 'sufficient to undermine confidence

in the outcome.'" *State v. Graves,* 668 N.W.2d 860, 882 (Iowa 2003) (quoting *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698).

**C. Palmer's Alleged Ineffective-Assistance-of-Counsel Claim.** Palmer alleges his trial counsel was ineffective for failing to object to an internally inconsistent marshalling instruction for the charge of interference with the official acts of a correctional officer, inflicting or attempting to inflict bodily injury, in violation of Iowa Code section 719.1(2). The instruction given by the court provided:

> The State must prove all of the following elements of Interference with an Official Act of a Correctional Officer Inflicting or Attempting to Inflict Bodily Injury:
>
> 1. On or about the 7th day of August, 2007, the defendant knew Richard Sorensen was a correctional officer who was engaged in his duty of supervising the defendant.
>
> 2. The defendant knowingly resisted or obstructed Richard Sorensen in the performance of this act.
>
> 3. In so doing, the defendant *inflicted or attempted to inflict* a bodily injury to Richard Sorensen.
>
> If you find the State has proved all of the elements, *the defendant is guilty of Interference with an Official Act Causing Bodily Injury.*
>
> If the State has proved Elements 1 and 2 but has failed to prove Element 3, the defendant is guilty of Interference with Official Acts.
>
> If the State has failed to prove either Element 1 or Element 2, the defendant is not guilty.

(Emphasis added.) Palmer claims this instruction was internally inconsistent because, under the third element of the instruction, the jury could find Palmer guilty of interference with an official act causing bodily

injury even if it concluded he only attempted to inflict a bodily injury upon Sorensen.

The marshalling instruction correctly delineates the elements of the crime of interference with the official acts of a correctional officer, inflicting or attempting to inflict bodily injury. Under Iowa Code section 719.1(2), a defendant under the custody, control, or supervision of the department of corrections commits the crime of interference with the official acts of a correction officer, inflicting or attempting to inflict bodily injury, when the defendant: (1) "knowingly resists, obstructs, or interferes with a correctional officer," (2) in the performance of the correctional officer's official duties, and (3) "in so doing inflicts or attempts to inflict bodily injury other than serious injury," upon the correctional officer. Iowa Code § 719.1(2).

However, after properly delineating the elements of this crime, the instruction erroneously states the name of the crime by referring to it as, *interference with an official act causing bodily injury* in the first full paragraph after numbered paragraph three. The correct name of the crime in that paragraph should have been, interference with an official act of a correctional officer, inflicting or attempting to inflict bodily injury. Accordingly, we must decide whether counsel's failure to object to this erroneous reference amounted to ineffective assistance of counsel.

**D. Analysis.** Although Palmer must prove both failure to perform an essential duty and resulting prejudice, if his claim lacks the necessary prejudice we "can decide the case on the prejudice prong of the test without deciding whether the attorney performed deficiently." *State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008).

Here, the jury also convicted Palmer of assault on a correctional officer, causing bodily injury. Under Iowa Code sections 708.1 and

708.3A(3), a defendant commits the crime of assault on a correctional officer, causing bodily injury when the defendant: (1) does an act "which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive" to a correctional officer, (2) the defendant has "the apparent ability to execute the act," (3) the defendant knows the person he assaulted is a correctional officer, and (4) the assault *causes* bodily injury or mental illness to the correctional officer. Iowa Code §§ 708.1(1), .3A(3) (emphasis added). The court properly instructed the jury as to the elements of this crime. Moreover, the jury returned a verdict finding Palmer guilty of assault on a correctional officer, causing bodily injury. Thus, the jury concluded Palmer did an act, which caused a bodily injury to a correctional officer, Sorensen.

Palmer claims he was prejudiced by his trial counsel's failure to object to the interference marshalling instruction because the jury could have convicted him for interference with an official act *causing* bodily injury even if it concluded he only *attempted* to cause such an injury. Assuming, without deciding, that the marshalling instruction for the crime of interference with the official acts of a correctional officer, inflicting or attempting to inflict bodily injury, was objectionable due to the inconsistent language in the instruction, Palmer has failed to prove he was prejudiced by this error because Palmer's conviction for assault on a correctional officer, causing bodily injury, makes it clear the jury concluded Palmer did an act that caused bodily injury to Sorensen. Therefore, the jury found Palmer did more than attempt to cause bodily injury to Sorensen. Consequently, we conclude misnaming the crime of interference with the official acts of a correctional officer, inflicting or attempting to inflict bodily injury, in the marshalling instruction was not

prejudicial because, but for this error, the result of the proceeding would not have been different. *See Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698. Accordingly, Palmer has failed to show prejudice, and we find against him on his ineffective-assistance-of-counsel claim.

**V. Disposition.**

We affirm the judgment of the district court because the district court correctly overruled Palmer's motion to suppress the incriminating statements he gave in the second interview with the authorities and his trial counsel did not provide ineffective assistance by failing to object to an internally inconsistent marshalling instruction.

**AFFIRMED.**