# IN THE COURT OF APPEALS OF IOWA

No. 14-1608
Filed December 23, 2015

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**COREY ALLEN TROTT,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Calhoun County, Thomas J. Bice, Judge.

Corey Trott appeals from a jury verdict finding him guilty of first-degree murder, contending the district court erred in denying his motion to suppress. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant Attorney General, for appellee.

Heard by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Corey Trott appeals from a jury verdict finding him guilty of first-degree murder. He contends the district court erred in denying his motion to suppress statements he made to a law enforcement officer during a police interview, asserting his constitutional rights were violated. We affirm.

### *I. Background Facts and Proceedings.*

On September 13, 2013, Corey Trott shot and killed Rockwell City Police Department Officer Jamie Buenting. Relevant here are the events following the shooting, which are generally undisputed.

Trott surrendered himself to Iowa State Patrol Trooper Kevin Krull, and Trott was handcuffed and placed on the ground. At approximately 5:36 a.m., while surrounded by officers with their weapons out, Trooper Krull read Trott his rights as set out in *Miranda v. Arizona*, 384 U.S. 436 (1966), from a card issued by the Iowa Department of Public Safety. The front side of that card, titled "Miranda Warning," states:

> 1. You have the right to remain silent.
> 2. Anything you say can and will be used against you in a court of law.
> 3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
> 4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.
> 5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

The reverse side of the card, titled "Waiver," states:

> After the warning and in order to secure a waiver, the following questions should be asked and an affirmative reply secured to each question.
> 1. Do you understand each of these rights I have explained to you?

2.  Having these rights in mind, do you wish to talk to us now?[1]

Trooper Krull read the "Miranda Warning" side of the card to Trott. The trooper then asked Trott if he "understood each of these rights" he explained to Trott, to which Trott answered, "Yes." The trooper next asked Trott the second question as stated on the card: "Having these rights in mind, do you wish to talk to us now?" Trott answered, "No." The trooper then stopped talking to Trott and made no further attempts to question Trott. Trott made no further statements at that point.

Calhoun County Chief Deputy Scott Anderson arrived at the scene to take Trott into custody. At that time, Trott was handcuffed and face down on the ground. The deputy placed Trott into the back seat of his patrol car, and Trott was re-cuffed and shackled. Chief Deputy Anderson then read to Trott the five statements of rights set forth above from a copy of the same "Miranda Warning" card. After reading this to Trott, the deputy asked Trott if he understood, and Trott verbally responded, "Yes, I understand." The deputy did not ask Trott the second "waiver" question—if Trott wished to talk—but the deputy did not have any further conversation with Trott.

Trott was transported to the Sac County jail. Around 7 a.m., Agent John Turbett, a special agent with the Iowa Division of Criminal Investigation, arrived at the jail to interview Trott. Agent Turbett knew the *Miranda* warning had been previously read to Trott but was "told [Trott] had not invoked any of his rights."

Shortly after arriving, Agent Turbett went to the jail's interrogation room to

---

[1] Although the reverse side of the card is entitled "Waiver," none of the questions ask if the suspect wishes to waive the rights expressed on the front of the card.

wait for Trott, and the subsequent interview was recorded. A deputy then brought Trott to the room and left. The agent first asked Trott if he needed anything to eat or drink or to use the restroom, to which Trott answered, "No." Thereafter, the following exchange between the agent and Trott occurred:

> [AGENT]: . . . I'm an officer, a police officer as well and, and I know this was a really a, a tough morning and I know there's, there's been some buildup for you with this and, and some things going on in your life. At least that's what I understand and, and, uhm, Corey, if you're okay what I'd like to do is maybe just sit down and talk to you a little bit about what's been going on, uhm, and, uh, maybe, maybe you'd like somebody to, to maybe talk to right now and, and, and help make some sense of things and I'd, I'd love to be that guy right now.
>
> [TROTT]: Okay.
>
> [AGENT]: And sit down and talk to ya, uhm, if I can do that. Uhm, uh, I know, I think somebody had, had, uh, gone over some, some things with you, some, some rights earlier, and you understand—
>
> [TROTT]: Right.
>
> [AGENT]: —those?
>
> [TROTT]: Right.
>
> [AGENT]: Okay. Okay. Uhm, I've got those here, too, and I'll just, I'll just read through those with you—
>
> [TROTT]: Okay.
>
> [AGENT]: —real quick, just so you know . . . real quick, just so you know I know you've been read, I've got a little card here. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have a right to consult with a lawyer before you answer any questions or, uh, make any statement, and have a lawyer present during questioning. And if you can't afford one, one will be provided for you free of cost. That's the same thing that somebody else had—
>
> [TROTT]: Right.
>
> [AGENT]: —read you earlier? Okay. Great. Uhm, and you understand that?
>
> [TROTT]: Right.
>
> [AGENT]: Okay. Okay. And you're cool talking to me for a little bit?
>
> [TROTT]: Yeah.
>
> [AGENT]: I appreciate it. Thank you.

Agent Turbett then continued his interview with Trott.

The interview lasted a little over two hours, not including the fifteen-minute break Trott was given during the interview. Trott never expressed before, during, or at the end of the interview that he wished to invoke his right to a lawyer. Trott never gave the agent any indication he did not want to speak with the agent and remain silent, nor did Trott "take any steps" to end or cut off the interview. However, Trott was never asked to sign a written waiver of his *Miranda* rights, nor was he explicitly orally asked if he wished to waive his *Miranda* rights. Trott was not advised, other than the *Miranda* warning read to him, the "consequences of giving [the agent] the statement." Beyond asking Trott at the jail if he would speak to Agent Turbett, Trott was not badgered or further coerced by law enforcement officials to waive his *Miranda* rights and speak with the agent.

Trott was subsequently charged with first-degree murder. Trott later filed a motion to suppress the statements he made to Agent Turbett after the above quoted exchange, arguing his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I sections Nine and Ten of the Iowa Constitution were violated. Trott specifically asserted he

> was advised his rights under *Miranda* and he unequivocally invoked his right to remain silent during his first encounter with the police. [Trott's] invocation of his rights was ignored by the agents/officers and [Trott] was placed in a room under guard until he was interviewed by [Agent Turbett].

The State resisted, and a hearing was subsequently held.

At the hearing, after hearing the testimony of the three law enforcement officials that read Trott his *Miranda* rights, the parties made arguments to the court. The State asserted that under existing Supreme Court *Miranda* jurisprudence, Trott's invocation of his right to remain silent was "scrupulously

honored" and *Miranda* not violated. The court asked the State, "Isn't the factual record here, as indicated by Trooper Krull, that after he read from the card, the *Miranda* warnings to [Trott], he asked him if you want to waive and his answer was unequivocally, 'No'?" The State disagreed with that characterization of the record, noting Trott was not asked if he wished to waive his rights, but rather whether he wanted to talk, and Trott's "no" answer was invoking only his right to remain silent. The court stated it was "concerned about [Trott's] understanding of the consequences of waiving and giving that statement," and the State pointed out that Trott's motion only related to Trott's invocation of his right to remain silent. Trott responded to the State's argument, asserting Trott's answer "no" was an unequivocal invocation of both his right to remain silent and his right to an attorney but did not argue the point any further.

Thereafter, the district court entered its order denying Trott's motion. The court found the totality of the circumstances "clearly indicate[] that [Trott] waived his *Miranda* rights in giving his statement to the [agent]" because Trott

> was "Mirandized" three times, his statement given after the passage of significant time after [his] arrest, the statement was offered after the *Miranda* rights were again given and acknowledged, the statement was given to an officer other than the arresting officer, and the statement was given at a [different] location.

The court further found its conclusion was "bolstered by the fact that no claim is made by [Trott] of any intimidation, coercion, or deception on the part of law enforcement personnel. [Trott] gave his statement to the [agent] knowingly, voluntarily, and with intelligence after having waived his *Miranda* rights." The court did not address Trott's assertions that both his rights to silence and to an

attorney were violated. Trott did not amend or supplement his motion to suppress, nor did he file a motion after the court's ruling seeking the court address the right-to-an-attorney assertion.

Following a jury trial, Trott was found guilty of first-degree murder. Thereafter, he filed a motion for a new trial, arguing, among other things, that his statement to Agent Turbett should have been suppressed "for all the same reasons set out in the Motion to Suppress and at the Suppression Hearing." At the hearing on the motion, Trott's counsel stated: "I think that we made sufficient record on those issues during the Motion to Suppress and the pretrial matters . . . . So I'd rely on the record previously made on those issues." The court denied Trott's motion.

Trott now appeals the district court's ruling denying his motion to suppress. Though Trott asserted his claim before the district court under both the federal and state constitutions, he only cites and argues the federal constitution on appeal. Consequently, we will only consider Trott's claim under the federal constitution. *See State v. Pearson*, 804 N.W.2d 260, 266 (Iowa 2011).

"We review determinations of whether to suppress . . . statements made in violation of constitutional guarantees de novo." *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015). "This review requires us to make an independent evaluation of the totality of the circumstances as shown by the entire record, including the evidence presented at the suppression hearings." *State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012).

## II. Discussion.

Trott's express claim on appeal is that "the district court erred in overruling the motion to suppress [his] post arrest statements as products of an unlawful reinitiation of interrogation." Beyond this statement, Trott sets forth various concepts of *Miranda* jurisprudence, but his exact legal arguments are unclear. Discerning his argument is important, because certain *Miranda* violations have different outcomes. We will distinguish these concepts here briefly.

### A. *Right to Counsel.*

In *Miranda*, the Supreme Court first pronounced the now well-established rule that, before beginning a custodial interrogation, authorities must advise suspects of certain rights. *See Tyler*, 867 N.W.2d at 171 (discussing *Miranda*, 384 U.S. at 471, 478-79). Specifically, *Miranda* requires a suspect

> be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. at 479. The warning read to Trott from the Miranda Warning card adequately addressed the requirements of *Miranda*. Indeed, Trott does not argue the warning was improperly given or insufficient.

Since *Miranda*, the Supreme Court has continued to refine and clarify *Miranda*, as "informed by the application of *Miranda* warnings in the whole course of law enforcement." *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010). The Court's developments address many differing facets, such as when the *Miranda* warnings must be given to a suspect, *see, e.g., Stansbury v. California*, 511 U.S. 318, 322 (1994) (discussing "custody"); how a suspect invokes his rights, *see,*

*e.g.*, *Berghuis*, 560 U.S. at 382 (discussing invocation of right to remain silent); *Davis v. United States*, 512 U.S. 452, 459 (1994) (discussing invocation of right to counsel); what happens if a particular right is invoked, *see, e.g.*, *Edwards v. Arizona*, 451 U.S. 477, 485 (1981) (following invocation of right to counsel); *Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (following invocation of right to remain silent); and whether the suspect waived his rights, *see, e.g.*, *Berghuis*, 560 U.S. at 382 (discussing waiver determination after suspect invoked right to remain silent).

Relevant here are the Supreme Court's line of cases concerning a suspect's invocation of his right to remain silent and its separate line of cases concerning a suspect's invocation of his right to counsel. *See State v. Palmer*, 791 N.W.2d 840, 845-87 (Iowa 2010) (discussing *Edwards*, 451 U.S. at 484-85, and *Mosley*, 423 U.S. at 103-04). The result of a suspect's invocation of each of these rights has different implications and results. *See id.* at 845-46 (discussing the differing procedural safeguards upon invocation of the right to remain silent and the right to counsel as differentiated in *Edwards* and *Mosley*); *compare Edwards*, 451 U.S. at 485, *with Mosley*, 423 U.S. at 104.

As *Edwards* and its progeny hold, subject to a few exceptions not relevant here, "[o]nce a suspect requests an attorney, all interrogation must cease." *Lowe*, 812 N.W.2d at 580 (discussing *Edwards*, 451 U.S. at 484-85); *see also Maryland v. Shatzer*, 559 U.S. 98, 104 (2010) (discussing *Edwards* and its progeny); *Palmer*, 791 N.W.2d at 845-46 (discussing *Edwards*). "'[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only

that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.'" *State v. Harris*, 741 N.W.2d 1, 6 (Iowa 2007) (quoting *Edwards*, 451 U.S. at 484).

Unlike the invocation of the right to counsel, a suspect's invocation of his right to remain silent does not preclude law enforcement from reinitiating interrogation. *See Palmer*, 791 N.W.2d at 845-46 (discussing *Mosley*, 423 U.S. at 101). Rather, after a suspect has invoked his right to remain silent, under *Mosley* and its progeny, it is permissible for law enforcement to resume questioning if "the suspect's right to cut off questioning was scrupulously honored." *Id.* at 846. Determining whether "the suspect's right to cut off questioning was scrupulously honored" requires examining the totality of the circumstances by applying factors set out by the Supreme Court in *Mosley*. *See id.*

"Our preservation rule requires that issues must be presented to and passed upon by the district court before they can be raised and decided on appeal." *State v. Manna*, 534 N.W.2d 642, 644-45 (Iowa 1995). This includes constitutional questions. *See State v. Yates*, 243 N.W.2d 645, 650 (Iowa 1976). Here, the district court did not rule on the issue of whether Trott unequivocally asserted his right to counsel when he answered "no" to Trooper Krull's question, and Trott made no request for the court to enlarge its ruling. Trott does not advance any claims of ineffective assistance of counsel. *See Palmer*, 791 N.W.2d at 850 ("Ineffective-assistance-of-counsel claims are the exception to the general rule requiring a party to preserve error in the district court."). Consequently, insofar as Trott predicates error on the issue of whether he

invoked his right to counsel, there is nothing for us to review concerning that issue. *See Manna*, 534 N.W.2d at 644-45. Trott simply failed to preserve any alleged error on the invocation-of-his-right-to-counsel issue, and we do not address the issue further.[2]

### B. Right to Remain Silent.

We therefore turn to the invocation-of-right-to-remain-silent issue, which, as indicated above, implicates the principles of *Mosley*. *See Palmer*, 791 N.W.2d at 844-47. In *Palmer*, our supreme court set forth the relevant facts of *Mosley*:

> Mosley was arrested based on an informant's tip linking him to a recent string of robberies. The police took Mosley to the fourth floor of the police department, read him the *Miranda* warning, and interrogated him. When the questioning began, Mosley stated he did not want to answer any questions about the robberies and the interrogation immediately ceased. Mosley was then transferred to a cell on the ninth floor of the building. At no point did he indicate a desire to consult with an attorney. More than two hours later, a detective brought Mosley to the fifth floor, again advised him of his *Miranda* rights, and began to question him about an unrelated fatal shooting. At first, Mosley denied any involvement in the shooting but eventually made an incriminating statement implicating himself in the homicide. At no point during this second interrogation did Mosley ask to consult with a lawyer or indicate that he did not want to talk about the homicide. The Supreme Court granted a writ of

---

[2] In view of our holding, we need not address the issue of whether a suspect's simple response of, "No," to the question, "Having these rights in mind, do you wish to talk to us now?" invokes the right to counsel. It is noted that many cases find a simple "no" response to whether suspect wished to answer questions is an invocation of both rights (to remain silent and to counsel), though in most cases, the question presented to the suspect was different—"Are you willing to answer questions **without having an attorney present**?" *See* 83 A.L.R.4th 443 at §§ 15[a], [b] (discussing *McKeamer v. United States*, 452 A.2d 348, 351 (D.C. 1982), and other cases) (emphasis added). Where the question omitted the attorney part, like here, cases go different ways. *Compare People v. Covington*, 532 N.Y.S.2d 36, 38-39 (N.Y. Sup. Ct. 1988) (holding simple "no" applied to both rights, even though not specifically asked about attorney, pointing out that this may be a "new police practice tailored" to avoid the above type holdings), *with Dewey v. State*, 169 P.3d 1149, 1152-54 (Nev. 2007) (holding suspect did not invoke her right to counsel when she answered "no" to the question read after warning if she was willing to speak to law enforcement and never made a "request whatsoever for an 'attorney'").

certiorari to consider whether, consistent with *Miranda*, the police could resume questioning Mosley after he had asserted his right to remain silent.

*Palmer*, 791 N.W.2d at 846 (discussing *Mosley*) (citations omitted). Ultimately, the Supreme Court

> reasoned the right to remain silent protects a suspect's right to cut off questioning and thereby control the time at which questioning occurs, the subjects discussed, and the length of the interrogation. Thus, the Court concluded a resumption of questioning after a suspect has invoked his or her right to remain silent was permissible only when the suspect's right to cut off questioning was scrupulously honored.
>
> To determine whether Mosley's right to cut off questioning had been scrupulously honored, the Court examined the totality of the circumstances. Although the Court did not identify any controlling factors in its analysis, in holding Mosley's right to cut off questioning had been scrupulously honored, the court relied on the following facts in reaching its decision: (1) the police immediately ceased the interrogation upon Mosley's invocation of his right to remain silent, (2) the police resumed questioning only after the passage of a significant period of time, (3) before resuming questioning, the police provided Mosley with a fresh set of Miranda warnings, and (4) a new police officer, in another location, restricted the second interrogation to a crime that had not been a subject of the earlier interrogation.

*Id.* (discussing *Mosley*) (citations omitted).

To determine whether the State elicited incriminating statements from Trott in violation of his Fifth Amendment right to remain silent, we must apply *Mosley*'s established procedural safeguards. *See id.* at 848. Consequently, whether Trott's statements were elicited in violation of his constitutional rights rests on whether Agent Turbett "scrupulously honored" Trott's right to cut off questioning. *See id.* Trott argues that *Palmer* is distinguishable from his case, pointing out that the time lapse between Palmer's *Miranda* warnings and interview was approximately twenty-four hours, *see id.* at 842-43, compared to

only two hours in Trott's case. He also notes Palmer was advised of his *Miranda* rights orally and in writing and signed a written waiver, *see id.* at 843; he did not. It was Palmer that initiated the second interview with law enforcement, *see id.* at 849, whereas here, it is undisputed that Agent Turbett initiated his interview with Trott. Finally, Trott notes that he, unlike Palmer, was incarcerated for the same crime, which was the subject-matter of Agent Turbett's interview. *See id.* at 842-43. While these distinctions are factually correct, we do not find, considering the totality of the circumstances and *Mosley* considerations, that Agent Turbett failed to scrupulously honor Trott's initial request to remain silent.

Here, like in *Palmer* and *Mosley*, after Trott invoked his right to remain silent, no interrogation immediately followed. *See Palmer*, 791 N.W.2d at 846 (citing *Mosley*, 423 U.S. at 97-98, 104-06). Again, like in *Palmer* and *Mosley*, Trott was given the *Miranda* warning again prior to Agent Turbett's interview. *See id.* While the time period between Trott's original "no" response to Trooper Krull's waiver question was only about two hours, this is the same amount of time that passed in *Mosley*, and the Supreme Court found that amount of time was "a significant period of time." Finally, though Agent Turbett's interview with Trott was related to the crime for which Trott was incarcerated, this is but "one of the factors to consider under the totality of the circumstances." *Id*. at 849. The *Mosley* Court "clearly decided the invocation of the right to remain silent did not 'create a per se proscription of indefinite duration upon any further questioning *by any police officer on any subject*, once the person in custody has indicated a desire to remain silent.'" *Id.* (citing *Mosley*, 423 U.S. at 102-03). Given the

totality of the circumstances, Trott's right to remain silent was scrupulously honored.

### C. Waiver of Right to Remain Silent.

Finally, "[e]ven absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when making the statement." *Berghuis*, 560 U.S. at 382 (citation omitted); *see also Palmer*, 791 N.W.2d at 849-50. Trott's brief suggests that, should we find his right to remain silent was scrupulously honored by law enforcement, his statements to Agent Turbett should still be suppressed because he did not voluntarily or knowingly waive his right to remain silent. He states that "the district court mentioned several relevant factors without addressing them," and he notes that he "had been awake for the entire previous night" and that his competency was later an issue before trial. The State argues Trott failed to preserve this argument for our review. However, given that the district court expressly found Trott knowingly, voluntarily, and intelligently waived his *Miranda* rights, we find the issue preserved.

The Supreme Court explained in *Berghuis* that a waiver is voluntarily made when a suspect freely and deliberately chooses to waive his or her rights. *See* 560 U.S. at 382. It is knowingly and intelligently made when it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 382-83. The burden of showing the waiver was given voluntarily, knowingly, and intelligently is on the State. *See id.* at 383.

"Although *Miranda* imposes on the police a rule that is both formalistic and practical when it prevents them from interrogating suspects without first providing them with a *Miranda* warning, it does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights." *Id.* at 385 (internal citation omitted). Unlike the requirement that a suspect unambiguously and unequivocally invoke his or her *Miranda* rights, the suspect's *waiver* of those rights does not have to be explicitly given. *See id.* at 383-84. Rather, "[a]n 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." *Id.* at 384. Specifically, if "the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* Generally, "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385.

Here, Trott was given the *Miranda* warnings three different times, and his invocation of his right to silence following the first warning evidences he knew both how to invoke his rights and the consequences of abandoning his rights. Additionally, while Trott may have been tired when he was interviewed by Agent Turbett, there is no evidence in the record that Trott was intimidated, coerced, or deceived into waiving his right to remain silent by the agent or anyone. Though Trott's competency was initially challenged—the court found probable cause Trott was "suffering from a mental disorder which may prevent [him] from appreciating the charge, understanding the proceedings, or assisting effectively

in his defense"—Trott was evaluated and determined to be competent to stand trial. The evaluating physician specifically found Trott "understands the charges against him. He is able to work effectively with his defense counsel without interference of any psychological symptoms even though he has a diagnosis of paranoid personality disorder. He has a rational and factual understanding of the court process, including the key personnel and their functions." There is no evidence his disorder rendered him incapable of understanding his rights or waiving his rights. In these circumstances, Trott knowingly and voluntarily made a statement to the agent, so he waived his right to remain silent. *See id.* at 387; *see also Palmer*, 791 N.W.2d at 849.

### *III. Conclusion.*

Upon our de novo review, we conclude Trott failed to preserve alleged error on the invocation-of-his-right-to-counsel issue. Because we also conclude, considering the totality of the circumstances, Trott's right to remain silent was scrupulously honored and he knowingly and voluntarily waived the right, we affirm the district court's ruling denying his motion to suppress.

**AFFIRMED.**