NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 14a0651n.06

No. 13-5514

FILED
Aug 20, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FREDDIE M. GREGORY, | ) | |
| | ) | |
| Plaintiff – Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| PHILLIP J. BURNETT, Individually, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant – Appellee. | ) | |

BEFORE:  COLE, Chief Judge; DAUGHTREY and WHITE, Circuit Judges.

PER CURIAM.  Plaintiff-Appellant Freddie Gregory appeals the district court's grant of summary judgment based on qualified immunity to Defendant Phillip Burnett, a Kentucky State Police Lieutenant, in this 42 U.S.C. § 1983 action alleging unlawful traffic stops, false arrest, retaliatory arrest, and malicious prosecution, as well as state-law claims of negligence, intentional infliction of emotional distress, and malicious prosecution.  We agree with Gregory that the district court erred in failing to view the facts in the light most favorable to Gregory, and that the facts when so viewed support some of Gregory's claims.  We AFFIRM the district court's dismissal of Gregory's infliction of emotional distress claim and his claim based on the traffic stops, REVERSE the dismissal of his remaining claims, and REMAND for further proceedings.

**I.**

Gregory lived at the same location in Bell County, Kentucky, now denominated 33 Fred Gregory Lane, for 45 years, since age 8. Only Gregory and his father have homes on Gregory Lane. Between the two homes is a shared driveway that extends from the homes to Levi Branch Road. Around 2009, "when 911 went into effect," that shared driveway was named Fred Gregory Lane and a street sign was posted where the lane meets Levi Branch Road.

The facts viewed in a light most favorable to Gregory are that around 3:00 p.m. on April 4, 2009, Gregory was taking his granddaughter to lunch in his pickup truck. Gregory drove down his driveway/Gregory Lane when he observed a vehicle that he believed was being driven by Lt. Burnett in the middle of Levi Branch Road, about 65 feet away. Gregory stopped his truck while still on Gregory Lane and shut off the engine. Gregory contends that because Lt. Burnett had stopped him without reason three times before, all since mid-February 2009, Gregory had installed a video camera in his truck so that he would have proof that Lt. Burnett was illegally stopping him and harassing him. After turning the engine off, Gregory unfastened his seatbelt so that he could reach up and activate the video camera. Lt. Burnett motioned for Gregory to pull out onto Levi Branch Road, but Gregory did not and waved his hand for Lt. Burnett to keep driving. Gregory's video, which is in the record, captured Lt. Burnett pulling up alongside Gregory's truck, approaching Gregory's driver-side window, and asking for his driver's license. While reaching for his driver's license, Gregory pointed a finger at Lt. Burnett and said that he was tired of being harassed. At that point, Lt. Burnett opened Gregory's truck door, pointed at Gregory, and warned that if Gregory continued to point at him, he would take him to jail. Lt. Burnett told Gregory that his truck windows were tinted and that he was not wearing his seatbelt.

The video captures the following exchange beginning when Lt. Burnett approached

Gregory after pulling his vehicle alongside Gregory's truck:

> BURNETT: What's a going on?
> GREGORY: Taking the kid to town to get something to eat.
> BURNETT: Do you have your driver's license?
> GREGORY: Yeah.
> BURNETT: Can I see them?
> GREGORY: I'm sitting here on my own property.
> BURNETT: Well, no, you're not. Because that's marked right here [pointing to the "Gregory Lane sign,"] and you don't have a seat belt on. Let me see your driver's license.
> GREGORY: Buddy, I'm sitting here on my own property and ain't bothering nobody. I ain't got out on the public road.
> BURNETT: Let me see your license.
> GREGORY: I'm gonna let you see my license, but I'm just about tired of being harassed by you, now.
> BURNETT: Jump on out here. You point your finger at me, I'm gonna take you to jail.
> GREGORY: I'm just telling you. Well, take me to jail there and lock me up.
> . . . .
> GREGORY: The gun's over here, and here's the license for it.
> BURNETT: Let me see your insurance.
> GREGORY: I'll tell you this: You're gonna quit this harassment.
> BURNETT: Do what?
> GREGORY: You're gonna quit this harassing me, because I ain't done nothing illegal.
> BURNETT: Well, let's see here. Your window is tinted. And you're getting ready to get out here [pull out onto Levi Branch Road], and you didn't have your seat belt on. So I can stop you now. Okay?
> GREGORY: Where you see my windows tinted at? Where you see my windows tinted at?
> BURNETT: Look right here. Look right here. You can't even see through that.
> GREGORY: Well, I can't help it that you got them dark glasses on and can't see nothing.
> BURNETT: I'll tell you what. I'm gonna take you to jail for menacing.

Lt. Burnett arrested Gregory, searched him, and placed him in the back of his police vehicle. The arrest was for menacing, but Burnett gave Gregory citations for a seatbelt violation and disorderly conduct.

Gregory spent about three hours in jail before being released on his own recognizance. Gregory appeared for arraignment and an order setting a jury trial date was entered. However, after Bell County Prosecutor Neil Ward viewed the video of the incident, he decided not to prosecute. The parties (the Commonwealth of Kentucky and Gregory) later agreed to a dismissal without prejudice.

Gregory filed this action. After discovery, Lt. Burnett moved for and was granted summary judgment on all Gregory's claims. The district court determined that Lt. Burnett observed Gregory "violating KRS 189.125(6)," i.e., operating a motor vehicle on the public roadway without wearing a fastened seat belt, and concluded that, "[b]ased on the record, Lt. Burnett had reasonable suspicion to effectuate the traffic stop." The district court acknowledged that Lt. Burnett did not take "the correct course of action," which was to issue Gregory a citation for his infraction, but concluded that Lt. Burnett's "error . . . is not fatal to this Fourth Amendment analysis" because the provision of Kentucky law that requires that violators of the seatbelt laws be given a citation instead of being arrested "is not derived from the federal Constitution." The court observed that under a Fourth Amendment analysis, "the only consideration as it relates to arrest is whether there was probable cause for it," and that since "Gregory has been unsuccessful in pointing to specific facts to refute [the claim that he was not wearing his seatbelt] as well as the claim that he was on a public road," probable cause existed and summary judgment was proper. Because it found probable cause, the district court also dismissed Gregory's malicious prosecution claim. The district court further concluded that

Gregory's retaliatory arrest claim failed under the then-recent Supreme Court decision in *Reichle v. Howards*, 132 S. Ct. 2088 (2012), where the Court explained that it had never held that an arrest supported by probable cause could violate the First Amendment, and thus it was not clearly established at the time of Gregory's arrest that such a claim was possible. As to the state-law claims, the district court concluded that the negligence claims failed because Burnett's conduct was not negligent, and that the intentional infliction of emotional distress claim failed because, under Kentucky law, Gregory is precluded from recovering under a separate claim where he can pursue mental-distress damages under his negligence claim. PID 613. PID 558, 615. Gregory timely appealed.

## II.

To prevail on his § 1983 claims, Gregory "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001). "[A] defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

We review a district court's grant of summary judgment based on qualified immunity de novo. *See Bishop*, 636 F.3d at 765. Summary judgment is appropriate if "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Estate of Smithers v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Bishop*, 636 F.3d at

765. Gregory argues that the district court did not view the facts in a light most favorable to him and that disputed issues of fact regarding probable cause should have precluded summary judgment.

## III.

### A.  Traffic Stops

Gregory argues that he was unconstitutionally stopped twice: first, when Burnett, while in his police cruiser in the middle of Levi Branch Road, motioned for Gregory to pull out of his driveway/Gregory Lane but Gregory did not; and second, when Burnett pulled his car alongside Gregory's truck, asked for his license and told him to exit the truck.  To justify a traffic stop, an officer must possess either probable cause to believe a civil infraction has been committed or reasonable suspicion of criminal activity.  *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)); *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  Probable cause is required for an investigatory stop for completed misdemeanor traffic violations; an investigatory stop for an ongoing violation, no matter how minor, requires only reasonable suspicion.  *United States v. Simpson*, 520 F.3d 531, 540–41 (6th Cir. 2008).

This court recognized in *United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2000), that "law enforcement officers may approach an individual and ask general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave."  The Fourth Amendment's constitutional protection vests "only after [a] citizen has been seized."  *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006).  A "seizure" occurs when "in view of all of the circumstances surrounding the incident, a reasonable person would have

believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

The Supreme Court has rejected the notion "that the constitutional reasonableness of traffic stops

depends on the actual motivations of the individual officers involved." *Whren v. United States*,

517 U.S. 806, 813 (1996).

### 1. First "Stop"

The district court determined that Burnett's initial interaction with Gregory

> did not constitute a stop for purposes of the Fourth Amendment because there was no show of force or authority exhibited by the officer . . . . The reason Gregory demurred [when Burnett motioned for him to proceed] was because of previous encounters with Lt. Burnett . . . [that] had left him skeptical as to Lt. Burnett's true intentions. He surmised that Lt. Burnett only wanted him to continue driving so that he could pull him over and harass him. Gregory's sensitivities, however, are not germane to this analysis[.]

*Gregory v. Burnett*, No. 10-81-GFVT, 2013 WL 1320778 at *4 (E.D. Ky. Mar. 29, 2103).

We agree. Gregory was already stopped when Burnett motioned for him to pull out in

front of him. Burnett's action in waiving him to proceed could not reasonably be understood as a

show of force or authority.

### 2. Second "Stop"

According to Gregory, the second stop occurred when Burnett pulled alongside

Gregory's truck, asked Gregory to exit his truck, and arrested him. Gregory argues that when he

observed Burnett on Levi Branch Road, he was still on his own property; he turned his truck

engine off, took his seatbelt off to turn on his truck's video recorder and had no intent to move

the vehicle until Burnett passed him.

The district court rejected the argument that Gregory was not on a "public roadway" and

Gregory has not shown that the court erred in this conclusion. Further, Gregory was already

stopped when Burnett approached him and there is no constitutional impediment to an officer approaching a driver in his own driveway and engaging him in conversation. Although Burnett's command to exit the vehicle constituted a seizure, at that point Burnett announced his intent to arrest Gregory. Thus the second "stop" was not initially a seizure for constitutional purposes and we turn to the arrest.

## B. Arrest

A review of the tape shows that Gregory did nothing that would legitimately constitute either disorderly conduct or menacing. Although Burnett argues that there was probable cause to arrest for these offenses, one could easily conclude based on the tape that there was no probable cause to arrest for either offense as a matter of law. For purposes of this appeal, there is at least a question of fact regarding whether an arrest for these offenses was supported by probable cause. The district court correctly analyzed the case on the basis that the arrest had to be justified based on the seat belt violation.

KRS 189.125(6) states in relevant part that a "person shall not operate a motor vehicle . . . on the public roadways . . . unless the driver [is] wearing a properly adjusted and fastened seat belt . . . ." KRS 189.010(7) provides that an "operator" is the "person in actual physical control of a vehicle." A seatbelt violation is a civil infraction, *see* KRS 189.990(26) ("[a]ny person who violates KRS 189.125(6) shall be fined an amount not to exceed twenty-five dollars ($25)."). A police officer may not arrest for a civil infraction.

Whether Gregory's arrest constituted an unlawful seizure for the purposes of § 1983 must be determined on the basis of Fourth Amendment law, not on the basis of a state statute. *Cooper v. California*, 386 U.S. 58, 61 (1967) (finding the legality of a search and seizure is not determined by reference to a state statute, but rather, is resolved by Fourth Amendment analysis).

To succeed under § 1983, Gregory must show that he has been deprived of a right secured by the federal Constitution or by the laws of the United States. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994). "While the states are, of course, free to enact laws that are more protective of individual rights than the United States Constitution, a mere violation of such a state law will not establish a proper claim under § 1983." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (internal quotation marks omitted).

**1.**

The district court correctly determined that Burnett's error in arresting Gregory rather than issuing a citation does not rise to the level of a Fourth Amendment violation if there was probable cause to believe that Gregory committed the seatbelt violation. But, viewing the facts in the light most favorable to Gregory, there was a question of fact whether Burnett had probable cause to arrest for a seatbelt violation. According to Gregory, he was wearing the seatbelt when he pulled up to the intersection and saw Burnett, and he unbuckled the seatbelt only after he turned off the engine. Burnett claims to have seen Gregory without his seatbelt on before stopping his police vehicle, but Gregory submitted photographs that would undermine that testimony. Further, the tape supports Gregory's assertion that the engine was off and he was not operating his vehicle when Burnett approached him. Thus, there is a question of fact whether Burnett had probable cause to believe Gregory was driving without his seatbelt buckled.

**2.**

To prove a claim of retaliation, Gregory must demonstrate (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal

connection between his protected conduct and arrest because the arrest was motivated at least in part by his protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

"The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill, 4*82 U.S. 451, 462–63 (1987). Gregory had a protected right to request that Burnett stop harassing him, and a jury could conclude both that Burnett's conduct in arresting Gregory was in response to Gregory's exercising that right and that the arrest would deter a person of ordinary firmness from exercising that right.

"[C]laims involving proof of a defendant's intent seldom lend themselves to summary disposition" and "circumstantial evidence may provide sufficient evidence of retaliatory intent to survive summary judgment." *Holzemer v. City of Memphis*, 621 F.3d 512, 525–26 (6th Cir. 2010).

Once a plaintiff has met the burden of establishing that retaliation for protected conduct was a motivating factor behind the defendant's adverse action, the burden of production shifts to the defendant. If the defendant can demonstrate that he would have taken the same action in the absence of the protected conduct, he has met his burden and is entitled to summary judgment if he can "show affirmatively that there is no genuine issue in dispute." *Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002) (reversing the district court's dismissal of the plaintiffs' claims that the defendants' removal of their duck blinds from a lake constituted retaliation for their exercise of First Amendment rights in criticizing the defendants' management of the lake.)

In *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007), also a First Amendment-retaliation case, the words and conduct of the person arrested were captured on a video, and

when viewed in the light most favorable to the plaintiff, revealed the absence of probable cause to make the arrest. This court recognized that even with a recording, there can be a dispute over material facts that a jury should decide, such as a feud between the police department and the plaintiff's family. Here, too, the video and the testimony present an issue of fact. In *Reichle* 132 S. Ct. at 2093, the Supreme Court reversed the denial of qualified immunity on the basis that "at the time of [the plaintiff's] arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment." Here, however, because the facts taken in the light most favorable to Gregory show an absence of probable cause, we follow *Leonard*, *supra*, and conclude that summary judgment is unwarranted. We therefore vacate the judgment and remand for further proceedings.

## C. Malicious Prosecution

Gregory argues Burnett purposefully arrested him for offenses he did not commit and filed a false citation, thereby violating Gregory's rights under Federal and Kentucky malicious prosecution laws. To succeed on a malicious prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must show:

> [First] that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal citations and quotation marks omitted).

Here, Burnett issued the citation and the prosecutor declined to proceed further after viewing the video. Thus, to the extent there was a prosecution, it was initiated by Burnett. There are also questions of fact bearing on whether Burnett had probable cause to charge Gregory with the various offenses Burnett charged him with. Next, although in contrast to a simple tort action for malicious prosecution, in this § 1983 action Gregory must show that he suffered a deprivation of liberty, Gregory testified he was detained for several hours following his arrest. Lastly, Gregory must show that the proceeding was resolved in his favor. Burnett argues that resolution of the Bell District Court action by way of an agreed-upon order signed by Gregory's counsel precludes Gregory from establishing the favorable-termination element under Kentucky law. *Davidson v. Castner-Knott Dry Goods, Inc.*, 202 S.W.3d 597, 605-06 (Ky. Ct. App. 2006). *Davidson* states:

> If the termination does not relate to the merits– reflecting on neither innocence of nor responsibility for the alleged misconduct– the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.
> . . . .
> The parties also engage in some debate over the specific applicability of the Restatement (Second) of Torts § 660(a) in this case. This provision provides that "[a] termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if ... the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused[.]"

The Kentucky court rejected the argument that the record was clear that Davidson agreed to the dismissal without prejudice and remanded for further proceedings on the issue.

Here, the case was dismissed pursuant to an "Agreed Order" signed by the county attorney and the public defender. As in *Davidson*, it is unclear to what extent this dismissal was

the product of an agreement or the prosecutor's admitted determination that he saw no evidence of disorderly conduct on the recording.

## D. State Claims

Gregory's complaint asserts Lt. Burnett acted unreasonably and breached his duty when he retaliated against Gregory, falsely arrested him, and maliciously prosecuted him without probable cause. The district court concluded that Gregory's state claims for negligence, gross negligence, and negligent infliction of emotional distress must fail because Lt. Burnett had probable cause and his conduct was not negligent. However, there are questions of fact bearing on the probable cause issue.

The district court also concluded Gregory is prevented from recovering under his claim of infliction of emotional distress because, in theory, he can pursue damages for mental distress under his negligence claim. *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. Ct. App. 1993) ("where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie"). We affirm for a different reason. Gregory did not present expert testimony supporting his claimed emotional damages as Kentucky law requires, and therefore his infliction-of-emotional-distress claim was properly dismissed. *See Osborne v. Keeney*, 399 S.W.3d 1, 17–18 (Ky. 2012).

Finally, the court found the state malicious prosecution claim failed for the same reason as the federal claim, because Burnett had probable cause for the arrest. But, again, there were questions of fact bearing on that issue.

**IV.**

For these reasons, we AFFIRM the district court's dismissal of Gregory's infliction of emotional distress claim and his claim based on traffic stops, REVERSE the dismissal of his remaining claims, and REMAND for further proceedings.