# IN THE COURT OF APPEALS OF IOWA

No. 17-0012
Filed October 11, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**STACY JAMES LEVELL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Cedar County, Stuart P. Werling,

Judge.


        Stacy Levell appeals from his convictions following a trial on the minutes

for driving while barred and driving while license revoked.  **REVERSED.**



        Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant

Attorney General, for appellee.



        Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**DANILSON, Chief Judge.**

Stacy Levell appeals from his convictions following a trial on the minutes for driving while barred as a habitual offender in violation of Iowa Code sections 321.560, .561, and .556 (2016), and driving while license revoked, in violation of section 321J.21. Levell contends the district court improperly denied his motion to suppress, arguing there was no reasonable suspicion justifying his seizure. The State asserts Levell was not "seized" within the meaning of the federal and state constitutions, and even if a seizure did occur, it was supported by reasonable suspicion. We find there was no reasonable suspicion permitting seizure under the facts of this case. We therefore conclude the district court erred in denying the motion to suppress and reverse the convictions.

**I. Background Facts & Proceedings.**

On April 1, 2016, State Trooper Robert Smith was traveling on the interstate when he noticed that a vehicle coming up behind him slowed in speed and faded back from his patrol car. Trooper Smith reduced his speed, the vehicle passed, and Trooper Smith ran a computer check on the vehicle's license plate. The check revealed the vehicle was registered to Brittney Johnson and Melissa Levell and also automatically alerted to an arrest warrant on Stacy Levell.[1] When the vehicle pulled off the interstate into a rest area, Trooper Smith followed and activated the patrol car's emergency lights as the vehicle was pulling into a parking stall. Trooper Smith parked his patrol car next to the

---

[1] The license-plate check generated information about an arrest warrant for Stacy Levell because even though the vehicle was not registered to Stacy Levell, it was the vehicle he had been driving when he was originally arrested for the offense giving rise to the arrest warrant.

driver's side of the vehicle, exited the patrol car, and spoke to the driver, who stated he was Stacy Levell. Trooper Smith learned Levell had a revoked license and was barred from driving.

Levell filed a motion to suppress, arguing Trooper Smith did not have reasonable suspicion to seize the vehicle in violation of the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. After an evidentiary hearing, the motion was denied, and the case proceeded to a trial on the minutes. Levell was found guilty of driving while barred and driving while license revoked. Levell appeals.

## II. Standard of Review.

Because Levell argues the motion to suppress should have been granted on constitutional grounds, our review is de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). We give weight to the district court's fact findings, especially respecting the credibility of the witnesses, but we are not bound by them. *Id.* On de novo review, we make "an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Palmer*, 791 N.W.2d 840, 844 (Iowa 2010) (citations omitted). "We consider both the evidence introduced at the suppression hearing as well as the evidence introduced at trial." *Id.*

## III. Analysis.

Levell asserts the motion to suppress should have been granted because he was unconstitutionally seized by Trooper Smith without reasonable suspicion. The State maintains Levell was not "seized" under the facts of this case.

*1. Seizure.* "The Fourth Amendment's protection against unreasonable intrusions on a person's liberty arises when an officer seizes a person. A seizure

occurs when an officer by means of physical force or show of authority in some way restrains the liberty of a citizen." *State v. White*, 887 N.W.2d 172, 176 (Iowa 2016) (citations omitted). "Whether a 'seizure' occurred is determined by the totality of the circumstances." *State v. Wilkes*, 756 N.W.2d 838, 842 (Iowa 2008).

"The Supreme Court has long recognized that not all police contacts with individuals are deemed seizures within the meaning of the Fourth Amendment." *State v. Smith*, 683 N.W.2d 542, 546 (Iowa 2004) (citation omitted). "[O]bjective indices of police coercion must be present to convert an encounter between police and citizens into a seizure." *Wilkes*, 756 N.W.2d at 843. "Encounters with the police remain consensual '[s]o long as a reasonable person would feel free to disregard the police and go about his business.'" *State v. Lowe*, 812 N.W.2d 554, 570 (Iowa 2012) (alteration in original) (citation omitted).

Here, Trooper Smith's actions demonstrated authoritative behavior necessary to establish seizure. Our supreme court has held the use of emergency lights may "invoke police authority and imply a police command to stop and remain." *Wilkes*, 756 N.W.2d at 844. "While we have recognized that the use of emergency lights is not *per se* coercive, we have observed that emergency lights, unlike ordinary headlights, can be coercive . . . ." *White*, 887 N.W.2d at 176.

Although Levell pulled his vehicle off the interstate and parked at the rest area of his own free will, Trooper Smith followed, activated his emergency lights, parked next to Levell, exited his patrol car, and approached the driver's side window of Levell's vehicle. A reasonable person under these circumstances would not believe they could disregard the trooper and go about their business.

The minutes of testimony also acknowledge that the officer "activated his traffic lights and initiated a traffic stop." We therefore find Levell was seized for purposes of the Fourth Amendment.

*2. Reasonable Suspicion.* Because we conclude a seizure did occur under these facts, we must address Levell's contention the seizure was unsupported by reasonable suspicion.

"[P]olice may stop a moving automobile in the absence of probable cause to investigate a reasonable suspicion that its occupants are involved in criminal activity." *Pals*, 805 N.W.2d at 774. Trooper Smith observed no traffic violation.

> "[R]easonable suspicion is based on an objective standard: whether the facts available to the officer at the time of the stop would lead a reasonable person to believe that the action taken by the officer was appropriate." *State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997). This determination is made "in light of the totality of the circumstances confronting the officer," including specific, articulable facts and the rational inferences drawn from them. *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004). The standard is more than a hunch or unparticularized suspicion, but less demanding than showing probable cause. *State v. Walshire*, 634 N.W.2d 625, 626 (Iowa 2001); *Kinkead*, 570 N.W.2d at 100.

*State v. King*, 867 N.W.2d 106, 123 (Iowa 2015) (alteration in original).

Levell asserts that because the vehicle was not registered to him and Trooper Smith did not confirm Levell was driving before seizing the vehicle, Trooper Smith did not have reasonable suspicion permitting seizure. We agree.

At the hearing on the motion to suppress, Trooper Smith testified only that there appeared to be two people in the vehicle as he pulled into the rest area. Trooper Smith did not testify he saw the driver or the individuals in the vehicle as they passed him on the interstate. Trooper Smith also did not testify that he observed the gender of the driver (or of any individual in the vehicle) before he

activated his lights, parked his patrol car next to the vehicle Levell was driving, and exited the patrol car to speak to the driver. Although the arrest warrant indicated to Trooper Smith that Levell sometimes drove the vehicle, he did not have any reason to believe Levell was in the car. In fact, the reasonable inference was that the driver of the vehicle was one of the registered owners, and there was no hunch or suspicion of criminal activity by the registered owners. *See State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010) ("[I]t is reasonable for an officer to infer the registered owner of the vehicle will do the vast amount of the driving.").

The State asserts Levell's hesitation to pass the patrol car on the interstate and decision to stop at a rest area only fifteen minutes from home were evasive tactics used by Levell to avoid interaction with Trooper Smith. The State argues Trooper Smith's observation of these tactics, coupled with the knowledge Levell could be driving the vehicle, allowed him to form a reasonable suspicion that Levell was the driver.

We find these facts are insufficient to establish more than a hunch or unparticularized suspicion that Levell could be driving or a passenger in the vehicle. Slowing at the sight of a patrol car and stopping at a rest area fifteen minutes from home are actions many drivers may take based on a number of reasons entirely unrelated to criminal activity. We will not speculate on Levell's motivation for his actions in this case. Levell's actions as observed by Trooper Smith do not give rise to a reasonable suspicion of ongoing criminal activity.

**IV. Conclusion.**

On our review of the facts in this case, we find Trooper Smith did not have the requisite reasonable suspicion to justify the seizure of Levell's vehicle. We therefore conclude the district court erred in denying the motion to suppress, and we reverse the convictions.

**REVERSED.**

Tabor, J., concurs; McDonald, J., dissents.

**McDONALD, Judge** (dissenting).

I respectfully dissent. The trooper's interaction with this citizen did not violate this citizen's right to be free from unreasonable search and seizure under federal or state law.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The text of article I, section 8 of the Iowa Constitution is materially indistinguishable from the federal constitutional provision. *See State v. Kreps*, 650 N.W.2d 636, 640 (Iowa 2002). The touchstone of either constitution is reasonableness under the circumstances presented. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1617 (2015) (Thomas, J. dissenting) (stating "the ultimate touchstone of the Fourth Amendment is 'reasonableness'" (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006))); *Kreps*, 650 N.W.2d at 641. As relevant here, the Fourth Amendment and article I, section 8 are implicated when an officer seizes a person. *See State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004).

Not every encounter between a law enforcement official and a citizen is of constitutional dimension. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *see also United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980) ("Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth

Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'") (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)). "[M]ere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). For example, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion)).

The crucial test in determining whether a particular encounter rises to a seizure is whether "the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* at 437; *see also Mendenhall*, 446 U.S. at 554 (holding "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"). When conducting this analysis, "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554. "In the absence of some such evidence, otherwise inoffensive contact

between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555.

Under this controlling framework, the defendant was not seized as a matter of law. Unlike the cases cited by the majority, here the officer did not initiate a traffic stop. The defendant was already pulling into a parking stall when the trooper pulled beside him. The encounter occurred in a public place. It would be no different if the defendant were on foot and the officer pulled alongside him. When the trooper exited the vehicle, the defendant already was rolling down his window. The trooper did not direct or otherwise signal the defendant to roll the window down. The trooper was alone. The trooper did not draw his weapon or otherwise show authority. The trooper did not raise his voice. When the trooper spoke to the defendant, the trooper explained he was looking for Stacy Levell. The defendant then admitted he was Stacy Levell. The trooper's statement was explanatory and not coercive. There is no evidence the trooper raised his voice or used an assertive tone. In short, there is no factor identified in *Mendenhall* that would support the conclusion this encounter was a seizure.

There are a host of similar cases supporting the conclusion this type of police-citizen encounter does not rise to the level of a constitutional seizure. *See, e.g., United States v. Drayton*, 536 U.S. 194, 204 (2002) (holding bus passengers were not seized when officers boarded at rest stop and "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice" and concluding "[i]t is beyond question

that had this encounter occurred on the street, it would be constitutional"); *Gregory v. Burnett*, 577 Fed. Appx. 512, 517 (6th Cir. 2014) (holding there was no constitutional impediment to an officer approaching an already stopped vehicle and engaging in questioning); *United States v. Clements*, 522 F.3d 790, 794–95 (7th Cir. 2008) (finding no seizure where officers activated red and blue lights before approaching parked vehicle at night); *United States v. Barry*, 394 F.3d 1070, 1074–75 (8th Cir. 2005) (holding the defendant was not seized where officer tapped on window of parked vehicle); *United States v. Baker*, 290 F.3d 1276, 1277 (11th Cir. 2002) (holding no seizure where officer approached already stopped vehicle, asked occupants to roll down window, and questioned occupants); *United States v. Gipp*, 147 F.3d 680, 684–85 (8th Cir. 1998) (holding a highway patrol officer can approach a parked vehicle on a frontage road without offending the Fourth Amendment); *United States v. Dockter*, 58 F.3d 1284, 1287 (8th Cir. 1995) (holding that individuals "were not seized within the meaning of the Fourth Amendment when [a sheriff's deputy] pulled his vehicle [directly] behind their parked car and activated his amber warning lights" and did not ask coercive questions); *United States v. Kim*, 25 F.3d 1426, 1430 n.1 (9th Cir. 1994) (recognizing other circuit courts "have consistently held that an officer's approach of a car parked in a public place does not constitute an investigatory stop or higher echelon Fourth Amendment seizure"); *United States v. Klinginsmith*, 25 F.3d 1507, 1510 (10th Cir. 1994) ("The fact that Troopers Simone and Heady 'followed' Magee and Klinginsmith down the frontage road does not constitute a 'seizure.' The troopers did not stop the Buick. Magee did."); *Commonwealth v. Eckert*, 728 N.E.2d 312, 316 (Mass. 2000) (concluding

"that, by walking up to the defendant's parked vehicle at the rest area, knocking on the window, shining his flashlight inside and asking whether the defendant was 'all set,' [a state trooper] did not engage in any conduct that requires constitutional justification"); *State v. Hanson*, 504 N.W.2d 219, 220 (Minn. 1993) (finding no seizure where officer activated flashing red lights before approaching vehicle parked on highway shoulder at night); *State v. Vohnoutka*, 292 N.W.2d 756, 757 (Minn. 1980) ("[C]ourts generally have held that it does not by itself constitute a seizure for an officer to simply walk up and talk to a person standing in a public place or to a driver sitting in an already stopped car."); *City of Grand Forks v. Zejdlik*, 551 N.W.2d 772, 774–75 (N.D. 1996) ("[A] policeman's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response.").

I conclude this case is materially indistinguishable from the above-cited cases. No seizure occurred under the facts presented. I respectfully dissent.