# IN THE COURT OF APPEALS OF IOWA

No. 16-0472
Filed February 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NICHOLAS ROBERT CAMPBELL-SCOTT,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Nicholas Campbell-Scott appeals his convictions for possession of a firearm as a felon, among others, arguing the evidence was insufficient to support the convictions and his trial counsel was ineffective. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Brenda J. Gohr, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Following a jury trial, Nicholas Campbell-Scott was convicted of possession of a firearm by a felon, interference with official acts while armed with a firearm, carrying weapons, and eluding. On appeal, he argues there was insufficient evidence to prove he possessed a weapon, an element of three of the crimes for which he was convicted. He also asserts his trial counsel was ineffective in several respects. Upon our review, we affirm.

### I. Background Facts and Proceedings.

In September 2015, a Waterloo police officer was driving his squad car when he observed Campbell-Scott standing next to a car. The officer knew Campbell-Scott had had a warrant out for his arrest, and ultimately, after Campbell-Scott drove off in the car, the car was followed by two squad cars. The squad cars activated their lights and sirens, but the car did not stop. A pursuit ensued, ending when the car crashed into a light pole. However, Campbell-Scott jumped out of the driver's front door and continued on foot, running between the two squad cars. Officers chased Campbell-Scott about twenty feet, caught him, and handcuffed him. A passenger trying to exit the car was removed from the car by another officer and handcuffed.

Thereafter, officers discovered a revolver in a grassy area by a light pole, in front of Campbell-Scott's car. Another gun was found in the street on the passenger side of Campbell-Scott's car. Both guns were closer in proximity to the passenger side of the car, and only partial fingerprints that were not suitable for comparison were found on the guns. None of the officers saw Campbell-Scott or his passenger throwing any weapons to the ground. However, one of

the officers heard the sound of a metal clink when Campbell-Scott was "bailing out of the car," while the officer was "trying to grab hold of [Campbell-Scott]." The officer did not understand what the sound was until later when the revolver was found near the light pole. One of the squad-car videos showed an object being thrown and landing where the revolver was found, but it did not appear that the object was thrown by Campbell-Scott.

The State charged Campbell-Scott with possession of a firearm as a felon, in violation of Iowa Code section 724.26 (2015); interference with official acts while possessing a firearm, in violation of section 719.1(1)(f); eluding, in violation of section 321.279(3); and carrying weapons, in violation of section 724.4(1). Following a jury trial, Campbell-Scott was found guilty as charged. Campbell-Scott now appeals, challenging the sufficiency of the evidence to show he "possessed" a firearm and asserting his trial counsel was ineffective in several respects.

## II. Sufficiency of the Evidence.

A jury's guilty verdict will be upheld unless it lacks substantial evidence to support it, and we review such claims for the correction of errors at law. *See State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016); *State v. Hickman*, 576 N.W.2d 364, 366 (Iowa 1998). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Reed*, 875 N.W.2d at 704-05 (citation omitted). In making this determination, we do not review just the inculpatory evidence; rather, all of the record evidence must be considered, "including any reasonable inferences that may be fairly drawn from the evidence." *Id.* at 705

(citation omitted). But, we recognize that the jury was free to reject or credit certain evidence. *See id.*

Relevant here, the jury found Campbell-Scott guilty of three crimes, each requiring proof that Campbell-Scott "possessed" a firearm as an element of the statutory crime. *See* Iowa Code §§ 719.1(1)(f) ("If a person commits interference with official acts . . . and in so doing . . . is armed with a firearm, that person commits a class "D" felony."), 724.4(1) ("[A] person who . . . goes armed with a pistol or revolver, or any loaded firearm of any kind, whether concealed or not, or who knowingly carries or transports in a vehicle a pistol or revolver, commits an aggravated misdemeanor."), 724.26(1) ("A person . . . convicted of a felony . . . and who knowingly has under the person's dominion and control or possession . . . a firearm . . . is guilty of a class "D" felony."); *see also State v. Thompson*, No. 12-2314, 2013 WL 6686624, at *3-4 (Iowa Ct. App. Dec. 18, 2013) (discussing section 724.4(1) and its possession element); *State v. Neuzil*, No. 00-1956, 2001 WL 1659114, at *2 (Iowa Ct. App. Dec. 28, 2001) (same). Campbell-Scott argues the record evidence was insufficient to prove he had possession of a firearm.

In establishing whether a defendant had "possession" within the meaning of these statutes, proof of actual possession is not required. *See State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008); *State v. Cashen*, 666 N.W.2d 566, 569 (Iowa 2003); *see also Reed*, 875 N.W.2d at 705 (explaining that the same constructive-possession principles found in drug-possession cases apply to possession-of-firearms cases). Rather, proof of constructive possession is sufficient to establish possession. *See Reed*, 875 N.W.2d at 708.

Constructive possession of a firearm "exists when the evidence shows the defendant ha[d] knowledge of the presence of the [weapon] and ha[d] the authority or right to maintain control of it.'" *Id.* at 705 (citation omitted). Whether this occurred "turns on the peculiar facts of each case" and "may be proved by inferences," such as when the firearm is found in the defendant's exclusive possession. *Id.* at 705. But if the firearm is not found in the defendant's exclusive possession, the defendant's knowledge of the weapon and control over it must be established by proof, such as showing the defendant had actual knowledge of the firearm or from "incriminating statements or [other] circumstances from which a jury might lawfully infer knowledge . . . ." *Id.* at 708.

Here, Campbell-Scott did not have actual possession of either firearm, nor could either firearm be said to be in his exclusive possession, given the presence of the passenger in his car. Nevertheless, viewing the record evidence in the light most favorable to the State, the evidence provides circumstances from which the jury could lawfully infer Campbell-Scott had knowledge of and dominion over a firearm—namely, his elusion of the police and the presence of two guns found at the scene of the crash after he and his passenger attempted to flee. This evidence is more than Campbell-Scott's mere proximity to the contraband found. Campbell-Scott was the driver of the vehicle that eluded police. Though there may be numerous reasons Campbell-Scott fled from police, such as his intoxication or the outstanding arrest warrant, the jury could reasonably infer that he did not stop because he knew there were firearms in the vehicle. *See, e.g., State v. Wilson*, 878 N.W.2d 203, 214 (Iowa 2016) ("[T]he inferential chain connecting an act of flight to guilt for the crime charged can

reasonably be drawn . . . when the timing of the act suggests 'the sudden onset or the sudden increase of fear in the defendant's mind that he or she will face apprehension for, accusation of, or conviction of the crime charged.'" (citation omitted)).  Moreover, as the officers testified at trial, two guns being found at the scene where two fleeing suspects were apprehended supports an inference that each person had possession and control of one of the guns prior to each gun's disposal.  Although the contraband was not in Campbell-Scott's physical possession at the time of his arrest, viewing the facts in the light most favorable to the State, we conclude there is substantial evidence one of the firearms was in Campbell-Scott's constructive possession.  We therefore affirm on this issue.

### III.  Ineffective Assistance of Counsel.

Campbell-Scott also argues his trial counsel was ineffective in three respects.  He argues his rights under Iowa Code section 804.20 and *Miranda*[1] were violated, and he asserts his counsel was ineffective for not moving to suppress his statements and the results of his alcohol test based upon each of the claimed violations.  He also argues his trial counsel was ineffective for not objecting to a jury instruction's omission of the following sentence, which is found in the model jury instruction: "A person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing."  Campbell-Scott also claims cumulative error.

---

[1] In *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), the United States Supreme Court held that a suspect subjected to custodial interrogation must be warned of "the right to remain silent," anything said "can be used against [the suspect] in a court of law," "the right to the presence of an attorney," and if the suspect "cannot afford an attorney one will be appointed . . . prior to any questioning if so desired."

"To prevail on a claim of ineffective assistance of counsel, the claimant must show counsel failed to perform an essential duty and prejudice resulted." *State v. Ary*, 877 N.W.2d 686, 704 (Iowa 2016). Our review is de novo, and the claim fails if either element is lacking. *See State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016).

Nevertheless, we generally preserve ineffective-assistance-of-counsel claims for postconviction-relief proceedings, where a proper record can be developed. *See State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013). "That is particularly true where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). "[A]t a postconviction relief hearing, trial counsel will have an opportunity to explain [his or] her conduct and performance." *State v. Blair*, 798 N.W.2d 322, 329 (Iowa Ct. App. 2011). A lawyer, like any accused, is entitled to his or her day in court, especially when his or her professional reputation is impugned. *See State v. Bentley*, 757 N.W.2d 257, 264 (Iowa 2008). Consequently, we will only address claims of ineffective assistance of counsel on direct appeal when the record is sufficient to decide the issue. *See State v. Ross*, 845 N.W.2d 692, 697 (Iowa 2014). We find the record adequate here.

### A. Section 804.20 Violation.

Iowa Code section 804.20 provides for "a limited statutory right to counsel before making the important decision to take or refuse the chemical test under implied consent procedures." *State v. Hellstern*, 856 N.W.2d 355, 361 (Iowa 2014) (citation omitted). The statute specifically states, in relevant part:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, *without unnecessary delay after arrival at the place of detention*, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney.

(Emphasis added.)

Campbell-Scott states he invoked his section 804.20 "statutory right while still on scene at the accident," and, citing *State v. Moorehead*, 699 N.W.2d 667, 672 (Iowa 2005), he asserts that right was violated because he was not allowed "to make his phone call immediately upon arrival at the police station." The State concedes that Campbell-Scott asked to call his girlfriend at the scene of the crash. However, it argues the State's obligations under section 804.20 were satisfied when Campbell-Scott was permitted to contact his girlfriend at the police station before any field sobriety testing began. We agree.

It is true Campbell-Scott was not permitted to call his girlfriend immediately after his initial request. But, section 804.20 does not contain the word "immediately." Rather, as set out above, it only requires the call be granted "without unnecessary delay after arrival at the place of detention." Iowa Code § 804.20. A section 804.20 claim "must be decided in the context of the situation" the defendant was in at the time of the request, *see State v. Bowers*, 661 N.W.2d 536, 542 (Iowa 2003), and we apply "an objective consideration of the statements and conduct of the arrestee and peace officer, as well as the surrounding circumstances" concerning the request, *Moorehead*, 699 N.W.2d at 672. Here, Campbell-Scott *was* permitted to call his girlfriend after arriving at the police station before the implied consent advisory was read to him, and there is

no evidence that the short "delay," if any, was excessive. Campbell-Scott's section 804.20 rights were not violated in this case; therefore, Campbell-Scott's trial counsel had no duty to file a motion to suppress on this basis.[2] *See Ross*, 845 N.W.2d at 698 ("Trial counsel has no duty to raise an issue that lacks merit."). Consequently, Campbell-Scott's claim of ineffective assistance on this point fails as a matter of law.

### B. Miranda *Violation.*

At the scene, after Campbell-Scott was captured and handcuffed, he was advised of his *Miranda* rights. Thereafter, Campbell-Scott asked to call his girlfriend and an officer told him, "Yep, we'll make phone calls and get everything squared away in just a second." Officers asked Campbell-Scott questions thereafter, including who owned the car and if Campbell-Scott had been drinking. Campbell-Scott answered their questions. He was placed in the squad car with his passenger about seven minutes after asking to call his girlfriend. Shortly thereafter, an officer came back to the car and gave the *Miranda* warnings to both Campbell-Scott and the passenger. After verifying that both Campbell-Scott and the passenger understood, the following exchange occurred:

> CAMPBELL-SCOTT: We exercise our rights to remain silent.
> OFFICER: Well good. I would too after we just found the gun, man. Okay?
> CAMPBELL-SCOTT: What gun?
> OFFICER: The gun that's . . . about five feet from the car.
> [CAMPBELL-SCOTT OR PASSENGER]: [Unintelligible].
> OFFICER: The handgun that's five feet from the car.
> CAMPBELL-SCOTT: Who's side? What you talking about?

---

[2] *See also* our opinion of *State v. Smith*, No. 16-0749, 2017 WL _____, at *_ (Iowa Ct. App. Feb. 8, 2017) (The approximately eleven minutes that passed between the time of Smith's arrival at the police station and the time he was allowed to make a phone call was not an "unnecessary delay" and did not violate section 804.20.).

OFFICER: You better decide that.

A few minutes later, the officer returned to the car and told Campbell-Scott and the passenger, "Guys, I'm sorry. I meant plural. Plural. Okay? Thank gosh for in car camera videos too."

Campbell-Scott was transported to the police station shortly thereafter and taken to an interview room. Prior to the start of the interview, the officer again advised Campbell-Scott of his rights under *Miranda*, and Campbell-Scott agreed to talk to the officer. About an hour into the interview, after the officer mentioned the guns found at the scene, Campbell-Scott told the officer he wanted a lawyer. The officer essentially tried to persuade Campbell-Scott to talk to him, but Campbell-Scott repeated that he wanted a lawyer, and the officer ended the interview.

On appeal, Campbell-Scott argues that, "[g]iven the totality of the circumstances, it is clear that the officers violated Campbell-Scott's invocation of his right to remain silent and his statements should have been excluded" by way of a motion to suppress. He maintains that his statement in the squad car, that he was exercising his right to remain silent, meant any further conversation with him by the officers violated his *Miranda* rights. We disagree.

"Law enforcement officers are required to give *Miranda* warnings when a suspect is in custody and subjected to interrogation." *Schlitter*, 881 N.W.2d at 395. "For purposes of the Fifth Amendment, a suspect is in custody 'as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest."'" *State v. Tyler*, 867 N.W.2d 136, 171 (Iowa 2015) (citations omitted). "In a *Miranda* claim, interrogation consists of the express questioning and words and

actions beyond those normally part of arrest and custody 'that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Schlitter*, 881 N.W.2d at 395.

"When a suspect invokes the right to remain silent, the authorities must scrupulously honor the suspect's right to cut off questioning." *State v. Palmer*, 791 N.W.2d 840, 848 (Iowa 2010). In determining whether the suspect's right was "scrupulously" honored, we examine the totality of the circumstances, considering whether: (1) the police immediately ceased the interrogation upon the suspect's invocation of his right to remain silent, (2) the police resumed questioning only after the passage of a significant period of time, (3) before resuming questioning, the police provided the suspect with a fresh set of *Miranda* warnings, and (4) a new police officer, in another location, restricted the second interrogation to a crime that had not been a subject of the earlier interrogation. *See id.* at 846. Yet, a suspect's "invocation of the right to remain silent [does] not 'create a per se proscription of indefinite duration upon any further questioning *by any police officer on any subject*, once the person in custody has indicated a desire to remain silent,'" including "subsequent questioning by the same officer about the same crimes." *Id.* at 849 (citation omitted).

Here, it is true that the period of time that passed between Campbell-Scott's statement in the squad car and the subsequent interview at the police station was relatively short. Nevertheless, considering the totality of the circumstances, we do not find the officer failed to scrupulously honor Campbell-Scott's initial request to exercise his rights. Though the officer made a comment immediately following Campbell-Scott's initial request to exercise his rights while

in the squad car, the comment did not rise to the level of an "interrogation," even if it did elicit a response from Campbell-Scott. Most importantly, Campbell-Scott was again advised of his *Miranda* rights at the police station prior to the interview, and he agreed to speak to the officer; there is no evidence Campbell-Scott's decision was not knowingly, voluntarily, or intelligently made. Given the totality of the circumstances, Campbell-Scott's rights under *Miranda* were not violated. Accordingly, Campbell-Scott's trial counsel had no duty to file a motion to suppress on this basis, *see Ross*, 845 N.W.2d at 698, and his claim of ineffective assistance on this point fails as a matter of law.

### C. Jury Instruction.

The jury was instructed:

> The word "possession" includes actual as well as constructive possession, and also sole as well as joint possession.
> A person who has direct physical control of something on or around his/her person is in actual possession of it.
> A person who is not in actual possession, but who has knowledge of the presence of something and has the authority or right to maintain control of it either alone or together with someone else, is in constructive possession of it.
> If one person alone has possession of something, possession is sole. If two or more persons share possession, possession is joint.

*See also* Iowa Crim. Jury Instructions 200.47. Campbell-Scott asserts his trial counsel was ineffective because he did not object to the jury instruction's omission of this sentence: "A person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing." Campbell-Scott maintains that because that

sentence was not included, the instruction was incorrect and authorized the jury to find him guilty without the necessary proof. *See Cashen*, 666 N.W.2d a 572 ("A defendant's mere proximity to contraband is insufficient to support a finding of constructive possession."). He argues his trial counsel had a duty to object to the instruction, and he was prejudiced by that failure.

"In a criminal case, the district court is required to instruct the jury as to the law applicable to all material issues in the case." *State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012), *rev'd on other grounds*, *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016). Though "trial courts should generally adhere to the uniform instructions," *id.* at 143, "the court is not required to give any particular form of an instruction; rather, the court must merely give instructions that fairly state the law as applied to the facts of the case." *State v. Edouard*, 854 N.W.2d 421, 434 (Iowa 2014), *rev'd on other grounds*, *Alcala*, 880 N.W.2d at 708. "The validity and sufficiency of jury instructions are not evaluated in isolation, but rather in context with other instructions as a whole." *State v. Schuler*, 774 N.W.2d 294, 297 (Iowa 2009). But, in the context of a claim that counsel was ineffective for failing to preserve error, "the instruction complained of [must be] of such a nature that the resulting conviction violate[s] due process." *State v. Thorndike*, 860 N.W.2d 316, 321 (Iowa 2015) (citations omitted). Notably, while an argument that counsel failed to object to an erroneous jury instruction has appeal, that appeal "is diminished in most situations where practical considerations make it unlikely that the inclusion of a particular element in the marshaling instruction would have produced any difference in the verdict of the jury." *State v. Broughton*, 450 N.W.2d 874, 876 (Iowa 1990). Consequently,

when such a claim is made, the defendant "must affirmatively demonstrate counsel's alleged deficiency undermines our confidence in the verdict and therefore resulted in prejudice entitling him to a new trial, regardless of whether his claim would require reversal if it were before [the court] on direct appeal." *Thorndike*, 860 N.W.2d at 321-22.

Here, viewing the instructions as a whole, we believe they fairly state the law as applied to the facts of the case. Nevertheless, even if the instruction had been altered following an objection by Campbell-Scott's trial counsel, we are not convinced on this record there is a reasonable probability the outcome of the proceeding would have been different. As explained above, the evidence provides circumstances from which the jury could lawfully infer Campbell-Scott had knowledge of and dominion over a firearm—namely, his elusion of the police and the presence of two guns found at the scene of the crash after he and his passenger attempted to flee. This evidence is more than Campbell-Scott's mere proximity to the contraband found. Because Campbell-Scott has not affirmatively demonstrated that the inclusion of the sentence in the instructions would have produced any difference in the verdict of the jury, Campbell-Scott cannot establish he was prejudiced by his counsel's alleged failure. Accordingly, his claim of ineffective assistance of counsel on this point fails as a matter of law.

### D. Cumulative Error.

Finally, Campbell-Scott asserts a general claim that, when all of the errors are considered together, the cumulative effect deprived him of a fair trial. *See Clay*, 824 N.W.2d at 501 ("[I]f a claimant raises multiple claims of ineffective assistance of counsel, the cumulative prejudice from those individual claims

should be properly assessed under the prejudice prong."). Having found no merit to Campbell-Scott's underlying claims that his rights under Iowa Code section 804.20 and *Miranda* were violated, and having concluded he failed to establish prejudice concerning the jury instruction, we reject his claim of cumulative error. *See id.* at 501-02; *see also State v. Artzer*, 609 N.W.2d 526, 532 (Iowa 2000); *Wemark v. State*, 602 N.W.2d 810, 818 (Iowa 1999).

### IV. Conclusion.

Although the firearms were not found in Campbell-Scott's physical possession at the time of his arrest, viewing the facts in the light most favorable to the State, we conclude there is substantial evidence from which the jury could find one of the firearms was in Campbell-Scott's constructive possession. We find no merit to Campbell-Scott's ineffective-assistance-of-counsel claims for failure to file a motion to suppress because we find his underlying claims that his rights under Iowa Code section 804.20 and *Miranda* were violated have no merit. Additionally, we find Campbell-Scott failed to show he was prejudiced by his trial counsel's failure to object to the omission of proximity language in the jury instruction because Campbell-Scott has not affirmatively demonstrated that the inclusion of the sentence in the instructions would have produced any difference in the verdict of the jury. We also reject his claim of cumulative error. Accordingly, we affirm Campbell-Scott's convictions.

**AFFIRMED.**