BLANE, Senior Judge.
 

 Applicant Daniel Wilson contends his criminal convictions cannot stand because the State admitted in its answer to the postconviction-relief (PCR) application, despite the evidence at the criminal trial, that the substance Wilson threw at jailers was vomit and not urine, which does not meet the elements of the crimes of which he was convicted. He also asserts that his trial counsel and potentially PCR counsel were ineffective and that his sentences were unconstitutional as cruel and unusual punishment. Based upon our review, we find Wilson's claims fail and affirm.
 

 I. Procedural Background.
 

 Wilson filed a pro se PCR application on September 21, 2015. His sole complaint and request for relief was to be resentenced so that all counts would run concurrently, as the crimes he was convicted of arose out of one act on his part. On September 22, the State filed its answer, where it stated: "The Respondent admits that the Applicant threw vomit on 5 Corrections Officers." Wilson's attorney filed an amended PCR application on November 20. The amended application included generic claims that the sentences constituted cruel and unusual punishment, there were material facts not previously heard that required vacation of the sentence, and the conviction or sentence was otherwise subject to collateral attack. Attached to the amended application was Wilson's affidavit that contained assertions his trial counsel was ineffective. The State did not file an answer to the amended application. The matter was deemed submitted to the district court on October 17, 2016, on depositions of Wilson and his criminal trial attorney, exhibits, as well as the underlying criminal file. On December 9, the district court filed its ruling, denying Wilson's PCR application
 

 II. Factual Background.
 

 Wilson was serving a misdemeanor sentence in the Des Moines County Jail on April 12, 2011. On that date, he threw a substance at a group of jailers that he admits he had stored in a milk carton in his jail cell. The charges against him alleged that the substance was urine. Each count alleged assault by an inmate, bodily fluids or secretions, as to each of the five jailers.
 
 [1]
 
 During his criminal trial, Wilson claimed that the substance he threw at the jailers was vomit, not urine, which would not fall within the crime's definition.
 

 At trial, the State presented evidence that the substance Wilson threw was urine. Officer Quick testified the substance that Wilson threw splashed on her, and it was watery and smelled like urine. Sergeant Levinson testified that as he opened the food hatch, Wilson threw liquid from containers he was holding and the liquid had a strong odor of urine and "something else that smelled horrible." Sergeant Levinson testified that he had moved to his right to avoid a "direct hit" before Wilson threw the urine, but both of his forearms were splattered with the liquid. Officer Parker testified that the liquid had a strong odor of urine and added that another substance that remained in a container resembled feces. Officer Parker was not touched by the liquid.
 
 [2]
 
 Officer Severs testified the liquid was "water looking" and "urine probably," but did not recall its odor. Officer Schneder testified the substance was yellow and smelled like urine and it landed on her right arm, her pant leg, and on her boots. Officer Smith testified Wilson threw "liquid feces" at the officers, which he described as a "liquid, kind of creamy-colored" with a definite smell of urine.
 

 Based upon its verdicts, the jury found the substance Wilson threw at the jailers was urine and not vomit as he contended. The jury convicted Wilson of: count I: assault on a jailer; count II: assault by an inmate, bodily fluids or secretions; count III: assault on a jailer; count IV: assault by an inmate, bodily fluids or secretions; and count V: assault by an inmate, bodily fluids or secretions. Counts I and III were lesser-included offenses constituting serious misdemeanors. Counts II, IV, and V were class "D" felonies. Wilson was sentenced on November 21, 2011, to a term of incarceration of five years on each of the three class "D" felonies, and one year of incarceration on each of the two serious misdemeanors, all to be served consecutively, for a total of seventeen years.
 

 Wilson appealed his convictions and this court affirmed.
 
 State v. Wilson
 
 , No. 11-2014,
 
 2013 WL 988921
 
 , at *3 (Iowa Ct. App. Mar. 13, 2013). We determined that the jury received sufficient evidence to support the convictions, noting:
 

 At trial, the jury heard officers' testimony, testimony from Wilson, and watched a video of the incident. The jury found Wilson guilty of three counts of "D" felony assault by an inmate (bodily fluids or secretions), and two counts of the lesser-included offense of assault on a jailer, apparently agreeing with Wilson that not all of the officers were hit by the bodily fluids. The jury received sufficient evidence to support Wilson's convictions.
 

 Id.
 

 III. Preservation of Error.
 

 In his trial brief, Wilson only argued the issues related to his trial counsel being ineffective. The trial court stated in its ruling:
 

 The Applicant's brief filed as the final argument in this action was a recitation of the various ways in which the Applicant asserts trial counsel was ineffective. No other challenges to the Applicant's conviction or sentence were presented in the final brief.
 

 ....
 

 Based upon the foregoing, the record before the court is that the sole challenge the Applicant has in this postconviction relief action is that trial counsel was ineffective. The various grounds asserted are different ways in which counsel is alleged to have been ineffective. The Applicant has not presented any authority to support a challenge to the court's imposition of consecutive sentences.
 

 ....
 

 In his original Application, the Applicant also asserted that his sentence was unconstitutional because he was sentenced on five counts of assault when he only performed one act. No legal argument was presented to the court on this issue. Even though this claim may not be preserved, the court will briefly address the merits of it.
 
 [3]
 

 Wilson did not file a motion to enlarge or amend the trial court's ruling under Iowa Rule of Civil Procedure 1.904(2). In his appellate brief, Wilson acknowledges that the trial court in ruling on his PCR application "did not address the pro se application filed by Wilson on September 21, 2015, nor did it address the State's admissions that the substance thrown by Wilson on April 12, 2010 was vomit." Despite this concession, Wilson argues three issues on appeal: (1) that it was vomit, not urine, that was thrown and thus the evidence does not support his felony convictions; (2) his trial counsel was ineffective in pretrial preparation and at trial; and (3) the five consecutive sentences he received was cruel and unusual punishment.
 

 "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."
 
 Meier v Senecaut
 
 ,
 
 641 N.W.2d 532
 
 , 537 (Iowa 2002). "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court."
 
 State v. Rutledge
 
 ,
 
 600 N.W.2d 324
 
 , 325 (Iowa 1999).
 

 We note that the district court did address the urine-versus-vomit issue in addressing the ineffective-assistance-of-counsel claim. In addition, despite not being argued by Wilson, the district court agreed to address the cruel-and-unusual-punishment issue. For these reasons, we will address the three issues raised by Wilson in this appeal.
 

 IV. Standard and Scope of Review.
 

 PCR proceedings are civil in nature and are generally reviewed for the correction of errors at law.
 
 Ledezma v. State
 
 ,
 
 626 N.W.2d 134
 
 , 141 (Iowa 2001). To the extent an ineffective-assistance-of-counsel claim is raised, review is de novo.
 

 Id.
 

 In order for Wilson to succeed on an ineffective-assistance-of-counsel claim, he must prove (1) his counsel failed to perform an essential duty and (2) prejudice resulted from such failure.
 
 See
 

 State v. Palmer
 
 ,
 
 791 N.W.2d 840
 
 , 850 (Iowa 2010) (citing
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687 (1984) ). He must prove that his attorney's performance was deficient, meaning that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
 
 Strickland
 
 ,
 
 466 U.S. at 687
 
 . To establish the prejudice prong, the applicant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."
 

 Id.
 

 at 694
 
 . To establish a reasonable probability that the result would have been different, the applicant needs to offer evidence "that the probability of a different result is 'sufficient to undermine confidence in the outcome.' "
 
 State v. Palmer
 
 ,
 
 791 N.W.2d 840
 
 , 850 (Iowa 2010). If either prong of the two-part test is not met, the applicant fails to meet their burden.
 
 State v Cook
 
 ,
 
 565 N.W.2d 611
 
 , 614 (Iowa 1997).
 

 V. Discussion.
 

 A. Type of Bodily Fluid or Secretion
 

 Wilson contends that the State's answer to his PCR application, where it admitted the substance he threw at the jailers was vomit and not urine, requires a reversal of his convictions, since vomit does not meet one of the required elements of the three felony crimes of which he was convicted. We cannot agree.
 

 A PCR proceeding is a civil action and is triable at law.
 
 Overton v. State
 
 ,
 
 493 N.W.2d 857
 
 , 858 (Iowa 1992). A PCR proceeding is not a means for relitigating claims that were or should have been properly presented at trial or on direct appeal.
 
 Earnest v. State
 
 ,
 
 508 N.W.2d 630
 
 , 632 (Iowa 1993). Any claim not properly raised at trial or on direct appeal may not be litigated in a PCR proceeding unless there is sufficient reason for not properly raising it previously.
 

 Id.
 

 "A postconviction proceeding is not intended as a vehicle for relitigation, on the same factual basis, of issues previously adjudicated, and the principle of [r]es judicata bars additional litigation on this point."
 
 State v. Wetzel
 
 ,
 
 192 N.W.2d 762
 
 , 764 (Iowa 1971) (citation omitted). As the district court found, and our review of the record confirms, "The Defendant never denied that he threw something at the correctional officers. His defense from the day it took place, to the time of trial, until now is that he threw vomit on the officers, not urine." That the State erred in a pleading-its answer-in this civil PCR action does not allow a relitigation of Wilson's claim that was presented and rejected at his criminal trial and on direct appeal.
 

 Wilson could challenge the guilty verdict by way of a claim of newly-discovered evidence. To prevail on such a claim, Wilson is required to show: (1) that the evidence was discovered after the verdict, (2) that it could not have been discovered earlier in the exercise of due diligence, (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching, and (4) that the evidence probably would have changed the result of the trial.
 
 See
 

 Harrington v. State
 
 ,
 
 659 N.W.2d 509
 
 , 516 (Iowa 2003). Wilson does not argue that the State's answer containing the admission that Wilson threw vomit as opposed to urine is newly-discovered evidence. Even if he would, we are not obligated to find that an admission in this civil proceeding constitutes newly-discovered evidence sufficient to overcome the actual evidence presented by the State at the criminal trial. We agree with the trial court that the credible evidence at trial was that the substance involved could not have been vomit; it was urine. Wilson cannot prevail on this issue.
 

 B. Ineffective Assistance of Counsel.
 

 Wilson asserts that his criminal trial attorney was ineffective (1) for failing to take depositions before trial, (2) asking open-ended questions during trial that allowed evidence that showed Wilson in a bad light, and (3) failing to object during trial to certain bad-acts evidence. Wilson's trial counsel explained in his deposition that he discussed taking the depositions of the five jailers with Wilson. They decided not to depose these witnesses since that would give them an opportunity to correlate their stories. Wilson's counsel had already obtained the jailers' written reports and the jail surveillance video of the incident. Wilson's counsel felt that he had sufficient information and the depositions were not needed. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."
 
 Strickland
 
 ,
 
 466 U.S. at 690-91
 
 .
 

 In addition, Wilson's claim of ineffective assistance can be disposed of on the prejudice prong. As the district court pointed out, "But that does not mean the performance of the attorney affected the outcome of this case. It is important to remember the posture of the defense in this case. The Defendant never denied that he threw something at the correctional officers." Wilson's sole contention was that he threw vomit, not urine. This contention was not supported by evidence other than Wilson's testimony. It was rejected by the jury and by this court on appeal.
 
 State v. Wilson
 
 , No. 11-2014,
 
 2013 WL 988921
 
 , at *3 ("The jury received sufficient evidence to support Wilson's convictions."). That Wilson's counsel did not take depositions, asked open-ended questions that showed him in a bad light, or failed to object to certain bad-acts evidence would not have changed the verdict. If the claim lacks the necessary prejudice we "can decide the case on the prejudice prong of the test without deciding whether the attorney performed deficiently."
 
 State v. Maxwell
 
 ,
 
 743 N.W.2d 185
 
 , 196 (Iowa 2008). Upon our de novo review, we determine Wilson's ineffective-assistance-of-counsel claim fails.
 

 C. Cruel and Unusual Punishment.
 

 Wilson contends his consecutive sentences totaling seventeen years of incarceration are unconstitutional because he is being punished for one act-the throwing of urine from a container. Wilson also argues that his seventeen-year sentence (all counts ran consecutively) was an illegal sentence and was grossly disproportionate to the offense. He contends that his trial counsel was ineffective for failing to make this challenge at the time of sentencing or on direct appeal.
 

 As to Wilson's first contention, that his sentence of seventeen years is unconstitutional since he is being punished multiple times for one act-this argument is not supported by our case law.
 

 It is generally recognized that if accused ... is convicted on several counts of an indictment, and each count is for a Separate and distinct offense, a separate sentence may be pronounced on each count, and the court may pronounce separate and distinct sentences which are cumulative, and are to run consecutively. This is true, even though the several offenses were committed in the course of a single transaction. ...
 

 State v. Criswell
 
 ,
 
 242 N.W.2d 259
 
 , 260 (Iowa 1976) (alteration in original) (citation omitted). In
 
 State v. Taylor
 
 ,
 
 596 N.W.2d 55
 
 , 57 (Iowa 1999), the court reaffirmed the rationale of
 
 Criswell
 
 and explained that the decision to impose consecutive sentences is discretionary. Since Wilson's contention is not supported by law, his claim that his trial counsel was ineffective for not making this argument likewise fails.
 

 As to Wilson's second argument, a defendant must challenge his sentence under either the "categorical" approach or make a "gross proportionality challenge to [the] particular defendant's sentence."
 
 See
 

 Graham v. Florida
 
 ,
 
 560 U.S. 48
 
 , 59 (2010) ;
 
 accord
 

 State v. Oliver
 
 ,
 
 812 N.W.2d 636
 
 , 640 (Iowa 2012). Here, Wilson only makes a gross proportionality challenge, and we recognize:
 

 The Eighth Amendment to the United States Constitution and article I, section 17 of the Iowa Constitution prohibit cruel and unusual punishment. Punishment may be cruel and unusual because it inflicts torture, is otherwise barbaric, or is so excessively severe it is disproportionate to the offense charged. Generally, a sentence that falls within the parameters of a statutorily prescribed penalty does not constitute cruel and unusual punishment. Only extreme sentences that are "grossly disproportionate" to the crime conceivably violate the Eighth Amendment.
 

 State v. Cronkhite
 
 ,
 
 613 N.W.2d 664
 
 , 669 (Iowa 2000) (citations omitted).
 

 The Iowa and federal courts have adopted a three-step analysis in which the court views whether or not the sentence has an inference of gross disproportionality by comparing the sentence given with other sentences or dissimilar criminal acts.
 
 See
 

 Oliver
 
 ,
 
 812 N.W.2d at 647
 
 (employing the three-step analysis first articulated in
 
 Solem v. Helm
 
 ,
 
 463 U.S. 277
 
 (1983) );
 
 see also
 

 State v. Bruegger
 
 ,
 
 773 N.W.2d 862
 
 , 873 (Iowa 2009) ).
 

 The first step in this analysis, sometimes referred to as the threshold test, requires a reviewing court to determine whether a defendant's sentence leads to an inference of gross disproportionality. "This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence." If, and only if, the threshold test is satisfied, a court then proceeds to steps two and three of the analysis. These steps require the court to engage in an intrajurisdictional analysis "comparing the challenged sentence to sentences for other crimes within the jurisdiction." Next, the court engages in an interjurisdictional analysis, "comparing sentences in other jurisdictions for the same or similar crimes."
 

 Oliver
 
 ,
 
 812 N.W.2d at 647
 
 (Iowa 2012). If the sentence does not create an inference of gross disproportionality, then no further analysis is necessary.
 
 State v. Seering
 
 ,
 
 701 N.W.2d 655
 
 , 670 (Iowa 2005). Our principal task at this stage is to "balanc[e] the gravity of the crime against the severity of the sentence."
 
 Oliver
 
 ,
 
 812 N.W.2d at 650
 
 .
 

 In balancing the two, we keep some general principles in mind. "The first is that we owe substantial deference to the penalties the legislature has established for various crimes" because " '[c]riminal punishment can have different goals, and choosing among them is within a legislature's discretion.' "
 

 Id.
 

 (quoting
 
 Graham
 
 ,
 
 560 U.S. at
 
 48 ). "Legislative judgments are generally regarded as the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and unusual."
 
 Bruegger
 
 ,
 
 773 N.W.2d at 873
 
 . "The second principle is that it is rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review."
 
 Oliver
 
 ,
 
 812 N.W.2d at 850
 
 . "The third principle is that a recidivist offender is more culpable and thus more deserving of a longer sentence than a first-time offender."
 

 Id.
 

 ;
 
 accord
 

 Solem
 
 ,
 
 463 U.S. at 296
 
 ("[A] State is justified in punishing a recidivist more severely than it punishes a first offender."). In other words, when determining the gravity of the offender's crime, a district court can consider the offender's criminal history. "Finally, we note that the unique features of a case can 'converge to generate a high risk of potential gross disproportionality.' "
 
 Oliver
 
 ,
 
 812 N.W.2d at 851
 
 .
 

 In applying this analysis, we do not lose sight that Wilson was convicted of five separate offenses involving five separate victims. Jailers and correctional officers are, by the nature of their work, placed in harm's way in supervising inmates. Our supreme court has commented, "Among the obvious harms to be addressed by the enactment of section 708.3B are the risk of exposure to blood-borne diseases that arises when a person comes into contact with another person's bodily fluids and the humiliating and degrading nature of coming into contact with other bodily substances."
 
 State v. McCullah
 
 ,
 
 787 N.W.2d 90
 
 , 95 (Iowa 2010). Further, our supreme court noted that although our legislature provided no statement of intent in the legislative history of the statute, other states' legislatures had:
 

 For example, the New York State Assembly explained its reasoning when it enacted Penal Law section 240.32, aggravated harassment of an employee by an inmate.
 

 Within the past decade, there have been over 200 reported cases of inmates in state correctional facilities throwing, tossing or expelling excrement, urine, blood or other bodily fluids at correctional officers. In addition to the vile and degrading nature of such conduct, the possibility for the transmission of diseases makes this conduct potentially a health risk for correctional officers, employees of the division of parole and employees of the office of mental health located within a correctional facility. While administrative and disciplinary remedies are available for inmates who engage in this type of conduct, these remedies have not been effective in curbing this behavior.
 

 Id.
 

 at 95 n.3 (quoting
 
 N.Y. Penal Law § 240.32
 
 Legislative Memorandum (McKinney 2008)).
 

 Our supreme court has recognized a penological rationale for this statute, that being deterrence. A five-year sentence for the potentially serious consequences faced by a jailer or correctional officer of an assault with bodily fluids appears to be justified and well within the discretion of our legislature. Additionally, Wilson is a recidivist offender. As the trial court noted, Wilson had previously been convicted of more than eighty offenses. Imposing consecutive sentences that total seventeen years for felony and misdemeanor assaults on five jailers does not cross the line of gross disproportionality.
 

 VI. Conclusion.
 

 Having addressed all of Wilson's contentions and finding that he cannot prevail on any in this appeal, the judgment of the district court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 Wilson was charged with violating Iowa Code section 708.3B(2) (2011), which defines the crime as follows:
 

 An act which is intended to cause pain or injury or be insulting or offensive and which results in blood, seminal fluid,
 
 urine
 
 , or feces being cast or expelled upon an employee of the jail or institution or facility under the control of the department of corrections.
 

 (Emphasis added).
 

 [2]
 

 Wilson was not charged with assaulting Officer Parker.
 

 [3]
 

 Later, in its conclusions of law, the district court stated: "The sole issues presented to the court in the Applicant's Amended Application and trial brief relate to claims of ineffective assistance of trial counsel."